1  Brian A. Pierik, City Attorney (SBN 62407)
   City of Pacific Grove
2  E-mail: bpierik@bwslaw.com
   Thomas B. Brown (SBN 104254)
3  E-mail: tbrown@bwslaw.com
   Gregory R. Aker (SBN 104171)
4  E-mail:  gaker@bwslaw.com
   BURKE, WILLIAMS & SORENSEN, LLP
5  1999 Harrison Street, Suite 1650
   Oakland, California 94612-3520
6  Tel:  510.273.8780

7  Attorneys for Defendants CITY OF PACIFIC
   GROVE, BILL PEAKE, JOE AMELIO, DEBBY
8  BECK, LUKE COLETTI, LORI MCDONNELL,
   CHAPS PODURI and NICK SMITH

9

10

11                    UNITED STATES DISTRICT COURT

12        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

13

14  RICHARD B. FOX,                     Case No. 5:24-cv-03686-BLF

15          Plaintiff,                  **REQUEST FOR JUDICIAL NOTICE IN
                                        SUPPORT OF DEFENDANTS' MOTION
16          v.                          TO DISMISS COMPLAINT;
                                        DECLARATION OF PACIFIC GROVE
17  CITY OF PACIFIC GROVE, CALIFORNIA,  CITY CLERK SANDRA KANDELL**
    BILL PEAKE, MAYOR, CITY OF PACIFIC
18  GROVE, CALIFORNIA, CITY PACIFIC     Filed Concurrently with Motion to Dismiss
    GROVE CALIFORNIA CITY COUNCIL       Complaint
19  MEMBERS JOE AMELIO, DEBBY BECK,
    LUKE COLETTI, LORI MCDONNELL,       Judge:    Hon. Beth Labson Freeman
20  CHAPS PODURI, AND NICK SMITH,       Date:     December 19, 2024
                                        Time:     9:00 a.m.
21          Defendants.                 Ctrm:     3

22                                      Trial Date: None Set

23

24          In accordance with Rule 201 of the Federal Rules of Evidence, Defendants City Of Pacific

25  Grove, California, Bill Peake, Mayor, City Of Pacific Grove, California, City Pacific Grove

26  California City Council Members Joe Amelio, Debby Beck, Luke Coletti, Lori McDonnell, Chaps

27  Poduri, And Nick Smith (Defendants) hereby request that the Court take judicial notice of the

28  following public records, the contents of each of which are not subject to reasonable dispute

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

4857-9158-2670 v1                        1                  Case No. 5:24-cv-03686-BLF
                                             REQUEST FOR JUDICIAL NOTICE; DECL. OF
                                                        CITY CLERK SANDRA KANDELL

1    because they are either (i) generally known within the trial court's territorial jurisdiction, or (ii)

2    can be accurately and readily determined from sources whose accuracy cannot reasonably be

3    questioned.  Attached to this Request, is the Declaration of Pacific Grove City Clerk Sandra

4    Kanell submitted to the Court in support of this Request.

5         Municipal ordinances and sections of municipal code are both proper subjects for judicial

6    notice. See *Tollis, Inc. v. Cnty. of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007); *1210 Cacique*

7    *Street, LLC v. City of Santa Barbara*, 2024 Slip Copy, 2024 WL 2037143, at * 1 (C.D. Cal. April

8    26, 2024); *Apartment Ass'n of Greater Los Angeles v. City of Beverly Hills*, 2019 WL 1930136, at

9    *2 (C.D. Cal. Apr. 17, 2019).

10        The records which are being request for judicial notice are certified copies of the following

11   City Ordinances:

12        **Exhibit A** --  Attached To The Declaration Of Sandra Kandell:   Certified copy of

13   Ordinance No. 12-017 An Ordinance of the City of Pacific Grove Deleting Chapter 12.16; Adding

14   New Chapters 12.10 to 12.80 – Trees And The Urban Forest To The Pacific Grove Municipal

15   Code; And Adopting The Urban Forestry Standards

16        **Exhibit B** –  Attached To The Declaration Of Sandra Kandell:   Certified copy of

17   Ordinance No. 13-013 An Ordinance Of The City Of Pacific Grove Amending Pacific Grove

18   Municipal Code Chapters 12.10 to 12.70 – Trees And The Urban Forest.

19        In addition to Ordinances referenced above, Defendants also request that the Court take

20   judicial notice of the fact that the Plaintiff Richard Fox did not file an appeal to the City Council

21   of the decision by the City Beautification and Natural Resources Commission (BNRC) of June 18,

22   2024 referenced in the Complaint based on the lack of any allegation in the Complaint that such an

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

4857-9158-2670 v1                    2                Case No. 5:24-cv-03686-BLF
                                        REQUEST FOR JUDICIAL NOTICE; DECL. OF
                                        CITY CLERK SANDRA KANDELL

1    appeal was filed and upon the lack of any City record of any appeal as confirmed in the

2    Declaration of Pacific Grove City Clerk Sandra Kandell attached hereto.

3    Dated:  July 11, 2024                                    BURKE, WILLIAMS & SORENSEN, LLP

4

5                                                          By:    */s/ Brian A. Pierik*

6                                                                 Brian A. Pierik
                                                                  Thomas B. Brown
7                                                                 Gregory R. Aker
                                                                  Attorneys for Defendants CITY OF
8                                                                 PACIFIC GROVE, BILL PEAKE, JOE
                                                                  AMELIO, DEBBY BECK, LUKE
9                                                                 COLETTI, LORI MCDONNELL, CHAPS
                                                                  PODURI and NICK SMITH
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

4857-9158-2670 v1                                    3                          Case No. 5:24-cv-03686-BLF
                                                                       REQUEST FOR JUDICIAL NOTICE; DECL. OF
                                                                          CITY CLERK SANDRA KANDELL

DECLARATION OF PACIFIC GROVE CITY CLERK SANDRA KANDELL

1.      I am the City Clerk for the City of Pacific Grove ("City") and I am the custodian of records for the City.   I have personal knowledge of the facts set forth in this Declaration and could and would competently testify thereto if called upon to do so.

2.      Attached hereto as Exhibit A is a true, correct and certified copy of Ordinance No. 12-017 An Ordinance of the City of Pacific Grove Deleting Chapter 12.16; Adding New Chapters 12.10 to 12.80 – Trees And The Urban Forest To The Pacific Grove Municipal Code; And Adopting The Urban Forestry Standards.

3.      Attached hereto as Exhibit B is a true, correct and certified copy of Ordinance No. 13-013 An Ordinance Of The City Of Pacific Grove Amending Pacific Grove Municipal Code Chapters 12.10 to 12.70 – Trees And The Urban Forest.

4.      The City has no record of an appeal filed by Richard Fox, or by any other person, of the decision of the City Beautification and Natural Resources Commission (BNRC) of June 18, 2024 that is referenced in the Complaint filed by Richard Fox with the Court.

I declare under penalty of perjury that the foregoing is true and correct and further declare that this Declaration was executed on July 10, 2024 in Pacific Grove, California.

_____
SANDRA KANDELL
CITY CLERK, CITY OF PACIFIC GROVE

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4857-9158-2670 v1

4

Case No. 5:24-cv-03686-BLF
REQUEST FOR JUDICIAL NOTICE; DECL. OF
CITY CLERK SANDRA KANDELL

# EXHIBIT A

## ORDINANCE NO. 12 -017

### AN ORDINANCE OF THE CITY OF PACIFIC GROVE DELETING CHAPTER 12.16; ADDING NEW CHAPTERS 12.10 TO 12.80 – TREES AND THE URBAN FOREST TO THE PACIFIC GROVE MUNICIPAL CODE; AND ADOPTING THE URBAN FORESTRY STANDARDS

**WHEREAS,** Chapter 12.16 of the Pacific Grove Municipal Code has been a source of highlighted community controversy for more than a decade. Numerous amendments to Chapter 12.16 (Tree Preservation and Protection) have been proposed from time to time, but with limited success due largely to divergent public opinions about the appropriate level of local regulations.; and

**WHEREAS,** previous urban forestry management practices have been approached more on a case-by-case basis through individual tree permits for removal, and less with a comprehensive city-wide management perspective. Decreasing city budgets and staff resources have limited the City's ability to manage the urban forest adequately over time; and

**WHEREAS,** new Chapters 12.10 to 12.80 – Trees and the Urban Forest and the Urban Forestry Standards are intended to improve the current approach to management of tree resources and the urban forest; and

**WHEREAS,** on April 4 and 8, 2012, the City Council reviewed and provided comments on the Draft Ordinance and Standards, and provided direction to commence the CEQA review process, and on July 18, 2012, the City Council held a public hearing on the Draft Initial Study/ Mitigated Negative Declaration (IS/MND); and

**WHEREAS,** trees are a valuable long-term community asset, and tend to increase property values; and

**WHEREAS,** trees protect the community from climatic extremes. They recycle air and water, absorb carbon dioxide and release oxygen, provide shade and windbreak protection, and can potentially moderate temperatures for an entire neighborhood or community; and

**WHEREAS,** trees can improve human health by absorbing air pollution and trapping dust. In addition, they buffer noise from traffic and other sources; and

**WHEREAS,** trees diffuse the effects of rain that weather houses, erode topsoil, and cause flooding. They provide enrichment of the soil for more plant growth; and

**WHEREAS,** trees reduce the volume and slow the velocity of storm drainage and dry weather flows. They also are able to filter out many contaminants that would otherwise end up in the ocean; and

**WHEREAS,** trees provide habitat for wildlife; and

EXHIBIT A                                Page 1

**WHEREAS,** trees contribute to the pleasantness and serenity of neighborhoods; and

**WHEREAS,** the presence of trees can do much to reduce the stress of modern living; and

**WHEREAS,** trees may enhance the architectural character of a neighborhood, accent or soften the effect of structures, and promote visual formality and aesthetic interest; and

**WHEREAS,** Notice of the city council public hearing on the second reading of the draft ordinance was published in the Monterey County Herald on October 14, 2012; and

**WHEREAS,** this ordinance deletes Chapter 12.16 of the Municipal Code and replaces them with new chapters described below; and

**WHEREAS,** this ordinance deletes City Council Policy 700-1, Hazard Tree Risk Assessment, and replaces it with new chapters described below; and

**WHEREAS,** this ordinance amends the Municipal Code to create new Municipal Code Chapters 12.10 to 12.90 – Trees and the Urban Forest; and

**WHEREAS,** these regulations are a primary tool used by the City to carry out the goals, objectives, and policies of the Pacific Grove General Plan and Local Coastal Program (LCP). The Pacific Grove city council intends that these regulations be consistent with the City's General Plan and LCP, and that any land use, subdivision, or development approved in compliance with these regulations will also be consistent with the General Plan and LCP; and

**WHEREAS,** in the enactment of this ordinance, the City followed the guidelines adopted by the State of California and published in the California Code of Regulations, Title 14, Section 15000, et seq.; and

**WHEREAS,** in the course of the review of the draft Ordinance and draft *Urban Forestry Standards*, changes made to the proposed project did not result in any new significant impacts to the environment; and

**WHEREAS,** the City prepared an Initial Study and Mitigated Negative Declaration to review ordinance pursuant to the California Environmental Quality Act (CEQA), and this Ordinance has been mitigated to a point where the proposed project will not have the potential to significantly degrade the environment; will have no significant impact on long-term environmental goals; will have no significant cumulative effect upon the environment; and will not cause substantial adverse effects on human beings, either directly or indirectly.

**NOW, THEREFORE, BE IT ORDAINED BY THE COUNCIL OF THE CITY OF PACIFIC GROVE:**

SECTION 1.  The foregoing recitals are adopted as findings of the City Council as though set forth fully herein.

SECTION 2.  If any provision, section, paragraph, sentence, clause, or phrase of this ordinance, or any part thereof, or the application thereof to any person or circumstance is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Ordinance, or any part thereof, or its application to other persons or circumstances. The City Council hereby declares that it would have passed and adopted each provision, section, paragraph, subparagraph, sentence, clause, or phrase thereof, irrespective of the fact that any one or more sections, paragraphs, subparagraphs, sentences, clauses, or phrases, or the application thereof to any person or circumstance, be declared invalid or unconstitutional.

SECTION 3.  The Urban Forestry Standards are hereby adopted.

SECTION 4.  Existing Pacific Grove Municipal Code Chapter 12.16 is hereby repealed.

SECTION 5.  Existing City Council Policy 700-1, Hazard Tree Risk Management, is hereby repealed.

SECTION 6.  Pacific Grove Municipal Code Chapters 12.10, 12.20, 12.30, 12.40, 12.50, 12.60, 12.70, and 12.80 are enacted to read as follows:

**Trees and the Urban Forest**
*[replacing existing chapter 12.16]*

**Chapters**
12.10    Purpose, Definitions, Applicability, and Effect
12.20    Protected Trees
12.30    Trees and Development
12.40    High Risk Trees and Nuisance Trees
12.50    Tree Service Contractors
12.60    Permit Application and Processing
12.70    Appeals


**Chapter 12.10  Purpose, Definitions, Applicability, and Effect**

Sections:
12.10.010  Purpose
12.10.020  Findings
12.10.030  Definitions
12.10.040  Applicability, Conflicts, and Other Requirements
12.10.050  Authority and Responsibility
12.10.060  Enforcement

**12.10.010       Purpose**
A.  The purpose of this title is to facilitate the protection, preservation, and restoration of Pacific Grove's urban forest; and enhance the visual and aesthetic uniqueness of Pacific Grove, in accordance with the City of Pacific Grove General Plan.

B.  Accordingly, this title provides regulations relating to the removal and pruning of Trees in public and private areas, to safeguard life, limb, health, property, and public welfare, by managing the urban forest pursuant to these regulations and the *Urban Forestry Standards*, and by developing programs for the urban forest of the City of Pacific Grove.

C. This Code is adopted pursuant to the authority granted by Section 7 of Article XI of the State Constitution to a City to make and enforce such local, police, sanitary, and other regulations as are not in conflict with the general laws of the State.

**12.10.020      Findings**
The city council makes the following general findings regarding the relationship between health, safety, and general welfare, and the selection, planting, conservation, protection, and maintenance of trees in public and private areas as addressed in this chapter.  These shall be the same findings as required to be made for a permit application for Protected Tree removal and replacement.

(a) Trees are a valuable long-term community asset, and tend to increase property values.

(b) Trees protect us from climatic extremes. They recycle air and water, absorb carbon dioxide and release oxygen, provide shade and windbreak protection, and can potentially moderate temperatures for an entire neighborhood or community.

(c) Trees can improve human health by absorbing air pollution and trapping dust. In addition, they buffer noise from traffic and other sources.

(d) Trees diffuse the effects of rain that weather houses, erode topsoil, and cause flooding. They provide enrichment of the soil for more plant growth.

(e) Trees reduce the volume and slow the velocity of storm drainage and dry weather flows. They also are able to filter out many contaminants that would otherwise end up in the ocean.

(f) Trees provide habitat for wildlife.

(g) Trees contribute to the pleasantness and serenity of neighborhoods.

(h) The presence of Trees can do much to reduce the stress of modern living.

(i)  Trees may enhance the architectural character of a neighborhood, accent or soften the effect of structures, promote visual formality and aesthetic interest, and screen undesirable views.

The above general findings are applicable when the health of Trees is preserved and the safety and general welfare of the public is observed.  Healthy Trees are achieved when the right Trees are planted in the right location and are properly maintained.

**12.10.030    Definitions**
For the purposes of this title, the definitions in the *Urban Forestry Standards* shall be the same as for the following regulations issued to implement this title.  Terms defined in the *Urban Forestry Standards* are indicated with initial capital letters when used in this Title.

**12.10.040    Applicability, Conflicts, and Other Requirements**
**A.  Applicability.**  This title applies to all trees within the City of Pacific Grove, except on Federal lands exempt from these standards.

**B.  Conflicts.**  If conflicts occur between this title and PGMC Title 18 (Building and Construction) or Title 23 (Zoning), or the Local Coastal Program, the more protective requirements shall prevail.  If conflicts occur between this title and other titles of the PGMC, the *Urban Forestry Standards*, or other City regulations, this title shall prevail.

**C.  Liability.**  Nothing contained in this title, within the adopted *Urban Forestry Standards,* other management programs, an adopted Street Tree landscaping plan, or other City document, shall be deemed to impose any liability for duty of care or for damages upon the City, its officers, or employees, nor shall it relieve the owner of private property from the duty to keep a Protected Tree on his property or under his control, in such condition as to prevent it from constituting a hazard or an impediment to travel or vision upon any street, park, boulevard, alley, or public place within the City.

**D.  Severability.**  Should any part or provision of this title be declared by a court of competent jurisdiction to be invalid, the same shall not affect the validity of the ordinance as a whole or any part thereof other than the part held to be invalid.

**E.  Adoption of Standards.**  The City hereby adopts the *Urban Forestry Standards*, which may be amended from time to time.

**F.  Adoption of Management Programs.**  The City may also adopt management programs, lists of appropriate tree species, Public or Street Tree landscaping plans, and other standards for the planting, maintenance, and removal of Trees on public lands.  All work performed under this title shall be performed in accordance therewith.

**12.10.050    Authority and Responsibility**
**A.  Generally.**  The Person in possession of Public Property and the owner of any private property shall have a duty to keep the Protected Trees upon the property and under their control in a safe and healthy condition.

The City shall be responsible for the maintenance of all Public and Street Trees.  Pruning, other maintenance, and the replacement of Street Trees shall generally be the responsibility of the City and shall be at City's expense.  Property owners may maintain, at their initiative, Street Trees on their property; such maintenance shall be in full conformance with the *Urban Forestry Standards*.

Pruning, condition assessment, and other maintenance by a Qualified Professional, and replacement of Trees on private property shall generally be the responsibility of the property owner(s) and shall be at property owner's expense. Any Person who determines that a Tree located on property possessed, owned, or controlled by them is a danger to the safety of themselves, others, or structural improvements on-site or off-site, shall have an obligation to secure the area around the Tree, support the Tree, or remove the Tree, as appropriate, to safeguard both Persons and improvements from harm. In determining the level of risk and urgency to address a potential danger, the requirements under Chapter 12.50 shall also apply.

It is the responsibility of all Persons owning any land within the City to keep all private Trees that extend over any public street or walkway pruned so as to remove any foliage encroaching into space above a street to a height of 14 feet, and above sidewalk areas to a height of 8 feet. The City holds the same responsibility for Street Trees and other Public Trees.

Any person claiming both financial and physical inability to perform the duties set out in this section may petition the city manager for relief. If the city manager concurs that such inability exists, the city manager shall direct City crews to perform the required work.

**B. City Staff.** The city manager, through the departments of public works and community development, shall be responsible for the development and maintenance of standards necessary for implementation of this title, known as the *Urban Forestry Standards*. The city arborist and public works director, among other duties, shall issue Tree maintenance and removal permits, oversee implementation of the *Urban Forestry Standards* and other management activities, and monitor and evaluate the effectiveness of this title.

**C. Natural Resources Commission.**
The natural resources commission shall develop and maintain lists of Trees recommended for or discouraged for use as described in *Landscape Trees for Pacific Grove*. The commission shall make recommendations to the city council after consultation with city staff, arborists, and nursery operators familiar with the subjects of such plantings.

The natural resources commission shall prepare a Street Tree landscaping plan setting forth the types and kinds of Trees, especially recommending native species that are Suitable and desirable for planting along Public Streets within the City.

Thereafter, the commission shall from time to time recommend to the city council updates covering the same subjects, each of which shall be complete in itself. Such lists shall be made available at city hall and shall be posted on the City's website.

**D. Utilities.** Public and private utilities that have easements within the City-owned Right of Way shall be responsible for Tree management and appropriate pruning consistent with this title and the *Urban Forestry Standards* in order to protect critical infrastructure, by obtaining a city-wide permit, in consultation with the city arborist.

**E. California Department of Transportation Right of Way.** Within the State Highway 68 corridor, the California Department of Transportation shall have authority to manage Trees

within the state-owned Right of Way, and is encouraged to implement Tree management programs consistent with this title and the *Urban Forestry Standards*.

**12.10.060  Enforcement.**  Enforcement of these Chapters shall be in accordance with Title 1 of the Municipal Code.

**Chapter 12.20          Protected Trees**

Sections
12.20.010     Overall Canopy Coverage
12.20.020     Categories of Protected Trees
12.20.030     Planting and Maintenance of Protected Trees
12.20.040     Pruning and Removal of Protected Trees
12.20.050     Public Tree Protection
12.20.060     Wildlife Protection
12.20.070     Replacement of Protected Trees
12.20.080     Canopy Coverage Goals
12.20.090     Appropriate Variation for Individual Situations
12.20.100     Alternatives When Protected Trees Cannot Be Replaced on Site

**12.20.010     Overall Canopy Coverage.**  The entire community benefits from a healthy and full Tree canopy and root system.  The City of Pacific Grove shall strive to achieve a 25-year city-wide canopy cover target to maintain the existing canopy cover with the goal of a total canopy cover of 33 percent.  The City shall develop and implement programs to maximize opportunities for the planting of Public Trees.  The City shall encourage reporting on the removal of non-Protected Trees to track changes in the overall canopy coverage.

**12.20.020     Categories of Protected Trees**
  (a)  Four categories of Trees are protected as specified below.
     (1)     **Native Trees** – all Gowen cypress, regardless of size; all Coast live oak, Monterey cypress, Shore Pine, and Monterey pine 6 inches or greater in trunk diameter, measured at 54 inches above native grade.

     (2)     **Monarch Butterfly Habitat Trees** – all Trees in or within 100 yards of designated Monarch Sanctuaries.  For the purposes of this title, the following sites are designated as Monarch Sanctuaries, serving as official Pacific Grove monarch butterfly over-wintering sites:
          (A)   Monarch Grove Sanctuary. That portion of land bordered on the east and west by Ridge Road and Grove Acre Avenue, respectively, on the south by Short Street, and on the north by the northerly boundary of assessor's parcel numbers 006-361-30-031, -032, -033, and -034, extended from Grove Acre easterly to Ridge Road.
          (B)   Washington Park Site. That portion of land bordered on the east and west by Alder Street and Melrose Avenue, respectively, on the north by Pine Avenue, and on the south by the imaginary extension of Junipero Avenue westerly from Alder to Melrose.

Page 7

(3)    **Public Trees**– all Trees on Public Property 6 inches or greater in trunk diameter, measured at 54 inches above native grade, and all Street Trees, regardless of size.

(4)    **Designated Trees** – all Trees that are specifically designated to be saved and protected on public or private property during Development and all Trees otherwise identified — during Development or otherwise—for special protection by the property owner. Trees that are proposed to be removed as part of a Development project shall be replaced in accordance with with this Chapter, Chapter 12.30, and the *Urban Forestry Standards*.

(b) Nothing in this title limits or modifies the existing authority of the City under Title 23 (*Zoning*) to require Trees not covered by this title to be identified, retained, protected, and/or planted as conditions of the approval of Development.

**12.20.030    Planting and Maintenance of Protected Trees**
(a) The City, its residents, and its property owners benefit by having the right Tree planted in the right place. Native Trees are preferred, where Feasible. Trees to be planted should be selected from a list of appropriate landscape Trees for Pacific Grove, whenever possible. The planting and maintenance of Protected Trees shall be in accordance with the City's *Urban Forestry Standards*.

(b) Planting of Public and Street Trees shall be in conformance with an approved management plan for Trees on public property, including a Street Tree landscaping plan, developed and updated from time to time by the natural resources commission and approved by the city council. Street Tree plantings shall be considered first from the viewpoint of the people passing on or using the Streets, the benefits to stormwater management, the extension of pavement life due to the shade they provide, the adjacent property owner, and from the other broader community benefits. Of secondary consideration is the enhancement, embellishment, or other benefit of the properties abutting the Street or public property.

**12.20.040    Pruning and Removal of Protected Trees.**
(a) Substantial Pruning or Removal of any Protected Tree requires a permit, as described in Chapter 12.50 (*Permit Application and Processing*), except in an Emergency. All such work shall be done under the direction of the city arborist. A Tree that serves as part of a windbreak system, or assists in storm water drainage or the avoidance of soil erosion, or serves as a component of a wildlife habitat, is to be preserved if Feasible. Acceptable criteria for Substantial Pruning or Removal of any Protected Tree are as follows:
(1)    The Tree Risk Assessment Level is "High" or "Extreme" (see Section 12.40.010 (Actions To Be Undertaken for Trees Assessed as High Risk)) and there are not more cost-effective remedial solutions.
(2)    The Tree is causing or is projected to cause significant damage to hardscape (house foundations, driveways, retaining walls, patios, etc.), utility service lines, or infrastructure (sidewalk, curb, storm drain, Street, etc.) and there are not more cost-effective remedial solutions.
(3)    The Tree is within the fuel management zone around an occupancy, or is within a Very High Fire Hazard Severity Zone, as defined by CalFire, and such work is necessary to

reduce the risks due to wildfire (see the *Urban Forestry Standards,* Flammable Fuel Management).

         (4)    The Tree is determined to be a Nuisance (see Section 12.50.030), and there are not more cost-effective remedial solutions.

  (b)  A permit is not required for Pruning of less than 25 percent of the live branches of the entire Tree within a 12-month period; and/or cutting or Removal of any live limb with a diameter less than 6 inches or a circumference less than 19 inches at any point on such limb, or cutting or removal of roots less than 4 inches in diameter.

  (c)  Pruning or Removal of Monarch Butterfly Habitat Trees shall be prohibited except as prescribed in the approved *Monarch Sanctuary Habitat Management Plan* or upon a finding by the city council that such is necessary for proper maintenance of the site or for public health, safety, or welfare.

  (d)  Pruning or Removal of Trees within 100 yards of any boundary of a Monarch Sanctuary shall be prohibited during the months of October through April unless deemed necessary by the public works director for public health, safety, or welfare. Any Person aggrieved by or objecting to any exercise of authority by the public works director under this section shall have the right of appeal to the city council in accordance with Chapter 12.70.

  (e)  No Protected Tree shall be pruned to an extent that destroys its identity as a Tree, unless conditions for removal exist and the Tree is to remain as a snag.

  (f)  A Protected Tree shall not be Substantially Pruned or Removed for the purpose of securing or improving a view, for acquiring more sunlight or air, or to reduce organic litter, unless the Tree is to be replaced, subject to conditions determined by the city arborist. Protected Trees may be substantially pruned in order to provide a framed or filtered view. The City shall strive to preserve view corridors, as defined in the General Plan, through the maintenance and pruning of Public Trees and by encouraging private property owners to maintain and prune their Trees.

  (g)  A Protected Tree shall not be Removed solely because it is diseased if the disease is readily curable or is not spreading. In cases where an applicant for a Tree permit feels that the Tree is diseased, the city arborist may require an analysis of the Tree to determine the type, extent, and degree to which the disease directly affects the Tree. Such testing shall be performed by an independent expert chosen by agreement of the applicant and city arborist. Cost of the analysis shall be borne by the applicant.

**12.20.050**    **Public Tree Protection.**  Unless authorized by permit, no person shall:
  (a)  Remove, Top, or in any way damage, destroy, injure, or mutilate a Public Tree.
  (b)  Fasten any sign, wire, or injurious material to any Public Tree, other than a Public Tree under Paragraph 12.60.050.
  (c)  Excavate any ditch or tunnel, or place concrete or other pavement, within the Critical Root Zone of any Public Tree.



**12.20.060     Wildlife Protection**.  Tree pruning and removal activities shall take place outside the nesting periods of listed threatened, endangered, or special status species as specified by the California Department of Fish and Game or U.S. Fish and Wildlife Service.  Upon the discovering of any large nest, property owners and contractors shall consult the city arborist or a qualified biologist for appropriate pruning and removal times, best management practices, and inspections to ensure wildlife protection measures are being followed.

**12.20.070     Replacement of Protected Trees**.  Removal of any Protected Tree on a property that will continue to meet the canopy coverage goals in this Chapter after the Removal shall not require replacement.  For the removal of all other Protected Trees, whether living or dead, as well as in those cases where the tree is being left as a snag, one Replacement Tree shall be required for each Protected Tree Removed.

Replacement Trees shall be of a Suitable species and planted in a Suitable location, as agreed to by the city arborist and the property owner.  If agreement cannot be reached, the natural resources commission will determine the matter.  Owners are encouraged to select Replacement Trees from the approved list identified in the *Landscape Trees for Pacific Grove*.  Invasive Trees will not be approved.  For Upper Canopy Trees on lots in excess of 4,000 square feet, at least half of all replacement Trees shall be a Gowen Cypress, Coast live oak, Coast redwood, Monterey cypress, Monterey pine, or Torrey pine.

The city arborist or designee shall inspect replacement Trees during the first two years after planting to monitor survivability and growth progress.  Dead Trees or Trees in an irreversible decline shall be replaced by the property owner at the owner's expense.  A new species and replacement planting location may be agreed to at that time.

**12.20.080  Canopy Coverage Goals**.  The desired overall nature and scope of Tree canopy to achieve a mixed, healthy urban forest is as follows:

   (a) Residential properties:  The canopy coverage goal for Trees on residential properties shall be based on the available landscape area, if feasible, as follows:

| Available Landscape Area | Upper Canopy Trees | Lower Canopy Trees |
|---|---|---|
| Up to 2,000 square feet | 0-1 | 1-2 |
| 2,001 - 3,000 square feet | 2 | 2-3 |
| 3,001- 4,000 square feet | 3 | 3-4 |
| Over 4,000 square feet | Variable | Variable |

In accordance with Title 23, Zoning, "Site coverage" means the sum of building coverage plus areas covered by impervious surfaces.  In residential zoning districts, maximum site coverage is 60 percent.  For proposed developments on residential properties with site coverage exceeds 60 percent, Owners shall be encouraged to remove impervious surface area and to plant Trees to achieve the canopy coverage goal where appropriate.



On residential properties where the number of Trees after proposed Removal(s) would exceed the canopy coverage goals above, no Replacement Tree(s) shall be required.

(b) Commercial and governmental properties. One Tree per 30 feet of frontage, with a minimum of two Trees, if space is available. In parks and open space, the City shall strive to achieve at least 33 percent canopy coverage, where appropriate.

(c) Parking Lots. Thirty three percent of paved parking lots shall be shaded with tree canopies, and in conjunction with low impact development landscaping for stormwater management.

**12.20.090     Appropriate Variation for Individual Situations.** While the overall canopy coverage standards shall serve as the community-wide desired levels of forest cover, the appropriate configuration (number, size, species, and placement) for a given parcel will depend on a series of interrelated factors, as determined by the city arborist:
   (a) Neighborhood, Zoning district, and parcel objectives and aesthetics;
   (b) Existing canopy coverage on the lot
   (c) Adjacent properties and land uses;
   (d) Size and location of structures;
   (e) Existing infrastructure and potential for adverse impacts;
   (f) Topography and soil conditions;
   (g) Stormwater management and erosion prevention;
   (h) Windbreak potential;
   (i) Viewshed protection;
   (j) Wildlife habitat protection;
   (k) Long-term health potential of the replacement Tree.

**12.20.100     Alternatives When Protected Trees Cannot Be Replaced on Site.** In some circumstances, crowding or other physical constraints make it impossible or undesirable to replace a Protected Tree on site to meet the desired coverage levels.
   (a) For replacement of Native Trees and Monarch Butterfly Trees, or removal of a Public Tree if initiated by a Private Party, a fee established by resolution of the city council shall be paid to the City of Pacific Grove and deposited into the Community Tree Program Fund.
   (b) As established by the adopted fee schedule, a sum of money (an in-lieu fee) will be deposited in the Community Tree Program Fund, to be used solely for the planting and maintenance of Trees on City property..

Payment of in-lieu fees cannot be made as an alternative to replacement onsite unless findings can be made that the Tree replacement planting is not Feasible, based on the criteria identified in Section 12.20.090 (Appropriate Variation for Individual Situations).


### Chapter 12.30 Trees and Development

Sections
12.30.010     Assessment of the Tree Resources
12.30.020     Construction Impact Analysis

12.30.030      Minimum Tree Protection Standards during Construction

**12.30.010 Assessment of the Tree Resources**.  During the Development process, a Tree Resource Assessment shall be performed by a Qualified Professional, if deemed necessary by the city arborist, in accordance with the *Urban Forestry Standards*. This Qualified Professional will be designated the Project Arborist for the duration of the project.  All costs associated with the Project Arborist shall to be borne by the applicant.

The Development shall preserve, or mitigate for, the maximum number of Suitable individual Trees that exist on the site pre-development in accordance with the desired canopy in Chapter 12.20, and shall identify any Designated Trees that would be Removed as a result of Development.  Designated Trees shall be replaced as required by this title.

If Replacement of Designated Trees is not feasible, a sum of money (an in-lieu fee), to be assessed at the time of a Building Permit, shall be deposited into the Community Tree Program Fund.  The in-lieu fee amount for Trees removed as a result of Development shall consider the value of the Tree using the most recent edition of the *Guide for Plant Appraisal* published by Council of Tree and Landscape Appraisers or comparable guide established by the International Society of Arboriculture, the remaining canopy coverage on the property, and appropriate variation for individual situations as described in Section 12.20.080.

**12.30.020 Construction Impact Analysis.**  Prior to issuance of a planning or building permit, the Project Arborist shall review grading, drainage, utility, building and landscape plans to determine impacts to individual Trees.  Recommendations for alternative construction methods and preconstruction treatments shall be made.  Critical Root Zone specifications, including a protection-fencing plan, shall be completed.  Mitigation requirements for Designated Trees Removed due to construction impacts shall be determined.

All Critical Root Zone specifications recommended by the Project Arborist through review of planning or building permits shall be Conditions of Project Approval and delineated on construction drawings for the Building Permit.

**12.30.030  Minimum Tree Protection Standards during Construction.**  All Development projects shall adhere to the most current version of the "American National Standards Institute A-300 (Part 5) *Management of Trees and Shrubs during Site Planning, Site Development and Construction*" and shall be required as conditions of approval for discretionary permits granted by the Architectural Review Board or Planning Commission

To avoid beetle infestation, the lower six feet of Monterey pine Trees scheduled for preservation shall be sprayed with an appropriate pesticide as recommended by a licensed pest control adviser.

All improvement plans for the project shall include accurate trunk locations, Critical Root Zones (CRZ), and Canopy Extents of all Trees, or groups of Trees, to be preserved within the Development area. Tree Protection measures, fencing locations, and Special Treatment Areas are to be clearly defined on approved architectural/site plans to be used in the field and to be on file with the community development department.

The Project Arborist shall verify that all preconstruction conditions have been met (Tree fencing, erosion control, pruning, pre-construction treatments, etc.) and is in place. The Project Arborist may require the construction superintendent, or the demolition, grading, and underground contractors, to meet at the site prior to beginning work. This pre-construction site meeting shall be held to review and agree on procedures and Tree protection measures, as well as to establish haul routes, staging areas, contacts, watering requirements, etc.

## Chapter 12.40 High-Risk Trees and Nuisance Trees

Sections
12.40.010     High-Risk Trees
12.40.020     Actions to Be Undertaken for Trees Assessed as High Risk
12.40.030     Nuisance Trees
12.40.040     Abatement of a Nuisance

**12.40.010     High-Risk Trees.** A Tree with: 1) one or more defects (e.g., disease, significant lean, large cracks, a shallow root system); and 2) one or more targets (e.g., a use area or structure that would be struck or otherwise damaged in the event the Tree fell) imposes risks upon the community; or 3) because of age, is nearing mortality. Risk levels shall be determined using the International Society of Arboriculture (ISA) *Hazard Tree Evaluation* rating system, as detailed in the Urban Forestry Standards.

Protected Trees in the Moderate Risk category, with a Potential Failure Rating of 6 to 8, shall be monitored by the property owner at least annually, as well as upon any significant change in condition. Actions should be considered that will ameliorate the risk and that may extend the life of the Tree. The Property Owner shall develop a course of action for any Protected Tree in the High Risk category, with a Potential Failure Rating of 9 or higher.

**12.40.020     Actions To Be Undertaken for Dead Trees and Trees Assessed as High Risk.** When a Protected Tree is assessed as high risk, the actions taken shall be those that Remove the risk while imposing the least impact on the Tree. Such actions may involve removing a critical limb, drastically reducing the Tree's overall height, or removing the Tree. If the situation is an Emergency, such that the Tree would be given a Potential Failure Rating of 12, Extreme, immediate action is necessary, including, for example, cordoning off the area, to ameliorate the risk, until the appropriate work can be completed.

**12.40.030     Nuisance Trees.** A Tree meeting one or more of the following criteria may be determined to be a public nuisance:

(a)   Containing one or more limbs that obscure and impair the view of passing motorists, cyclists, or pedestrians so as to create a safety hazard;

(b)   Limiting access to a fire hydrant or other facility necessary for public safety;

(c)   Being irretrievably infested or infected with insect, borer, pest or disease that result in mortality, and that may infect or attack adjacent Trees, which cannot be preventatively treated;

(d)  Being infected with Pitch Canker and having crown damage that exceeds 50% of total canopy volume, or has other crown damage exceeding 50%;

(e)  Imposing a detriment to or crowding an adjacent Protected Tree;

(f)  Being of an invasive species as identified by *Landscape Trees for Pacific Grove*, the California Invasive Plant Council, or the California Invasive Species Advisory Committee;

(g)  Such other conditions as agreed to by the city arborist and the property owner.

**12.40.040      Abatement of Nuisance.**  The property owner is responsible for addressing the nuisance, using appropriate techniques; if the Tree is a Protected Tree, the owner shall follow the processes detailed in Chapter 12.60 (*Permit Application and Processing*).  When a Tree imposing a nuisance exists, for which the owner is not taking the appropriate action, the city arborist may give written notice thereof to the property owner, in the manner provided in PGMC 1.12.010 (Giving of Notice). Such notice shall describe the condition, state the work necessary to remedy the condition, and shall specify the time within which the work is to be performed. After the giving of such notice a copy shall be conspicuously posted on the property upon which such public nuisance is alleged to exist. If, at the end of the time specified, such work has not been performed, the City may perform such work, and the cost thereof shall constitute a charge against such owner, and if unpaid within 90 days of notice, shall be proposed to the city council as a lien on such property.

## Chapter 12.50 Tree Service Contractors

Sections
12.50.010      Tree Service Contractors
12.50.020      Contractor Adherence to the Ordinance and Urban Forestry Standards

**12.50.010      Tree Service Contractors.**  All Tree service contractors providing Tree trimming and Removal services in the City of Pacific Grove shall:

(a) Hold a valid business license with the City of Pacific Grove, a current California State Contractors License, a C61-D49 classification, and sufficient liability insurance; be bonded; and participate in the state's workers' compensation program.

(b) As a condition of obtaining or renewing a business license, meet with the city arborist at least once a year, in meetings to be set by the arborist, to review written standards for Tree trimming and Removal services in the City of Pacific Grove, and agree in writing to abide by such standards.

(c) Visibly mark all truck(s) and/or other vehicles utilized by the Tree Service Contractor with the contractor's name, state contractor's license number, business address, and phone number, in letters at least two inches high.

**12.50.020      Contractor Adherence to the Ordinance and Urban Forestry Standards.**  If the city arborist finds work by a licensed Tree service contractor to be in conflict with this title or the *Urban Forestry Standards*, the arborist will review the concerns with the contractor.

Continued failure to abide by these standards shall be grounds for revocation of the contractor's city business license.

## Chapter 12.60 Permit Application and Processing

Sections
12.60.010      Permit Required for Certain Work
12.60.020      Application for Permit
12.60.030      Tree Report
12.60.040      Review of Application
12.60.050      Public Noticing Requirements
12.60.060      Dead Trees and High Risk Trees
12.60.070      New subdivisions – Cost of trees paid to city
12.60.080      Issuance of Permit
12.60.090      Time Limits

**12.60.010      Permit Required for Certain Work.**  It shall be a violation of this title for anyone to Remove or cause to be Removed or Substantially Pruned a Protected Tree, except as allowed in this section and as addressed by the *Urban Forestry Standards*.

In the absence of Development, Protected Trees shall not be removed unless determined by the city arborist.  The city arborist may require relevant information, including on the basis of a Tree Report prepared by a Qualified Professional for the applicant, if deemed necessary.  The city arborist may determine that a Tree Report is not necessary if the Tree should be removed because it is dead, is high risk, is a detriment to or crowding an adjacent Protected Tree, or constitutes a Nuisance under Section 12.50.030.

**12.60.020      Application for Permit.**  Removal of a Protected Tree requires completion of a Tree removal application on forms provided by the city, accompanied by a fee as established in the City's master fee schedule.  Any person desiring to do any of the work described in this section shall apply for such permit.

**12.60.030      Tree Report**.  The application for Removal of one or more Protected Trees shall include a written Tree Report, as specified in the *Urban Forestry Standards*.  The Report shall be prepared for the applicant by a Qualified Professional and shall be submitted to the City to provide accurate information and a professional opinion regarding the condition, welfare, maintenance, preservation, and value of a Protected Tree.  The Qualified Professional signing the Tree Report shall not be a principal or employee of a Tree service or other contract service provider that has a vested interest or conflict of interest in the subject project.

**12.60.040      Review of Application.**  The city arborist shall review each application and may inspect the Tree and the surrounding area to determine whether, and under what conditions, the permit is to be granted.

The city arborist may refer a permit application to the natural resources commission for review and  a determination on permit approval or denial.

Before approving any application, the city arborist shall be required to make the findings that the approved actions best further the purposes of this title, as specified in Section 12.10.020 (Findings).

**12.60.050    Public Noticing Requirements.** A permit to Remove or substantially alter any Protected Tree is not effective until the tenth day following the date of posting the property on which the Tree or Trees subject to the permit are located, unless it is a nuisance pursuant to Section 12.40.030. The posted notice shall state that the permit approval may be appealed by any interested person during the 10-calendar-day posting period. City personnel shall post one notice on the subject Tree(s), two identical notices on public property within 200 feet of the property on which the subject Tree or Trees are located, in positions clearly visible to the public, and on the City's website. The subject Tree(s) must also be marked with a bright chartreuse ribbon around the trunk, which shall remain on the Tree until work has begun. All notices shall remain posted until all work is completed.

**12.60.060  Dead Trees and High Risk Trees.** All permit applications for dead Trees and High Risk Trees with a Potential Failure Rating of 9 or above shall be Removed in a timely manner and processed within 10 days and requirements for a Tree Report, posting, etc. shall be adjusted accordingly. No fee shall be required for the removal of dead Trees.

**12.60.070  New subdivisions – Cost of trees paid to city.** Before any street improvements in any new subdivision of real property in the city are accepted by the city council, the subdivider shall pay to the City the total cost for purchasing and planting of all trees to be planted along all streets in said subdivision. After receipt of said payment, the city will plant said trees at the proper time as determined by the city arborist.

**12.60.080    Issuance of Permit.** If approved, a permit shall be issued authorizing a scope of work, so long as it:
   a.  Will not create, continue, or aggravate any hazardous condition or public nuisance;
   b.  Will not prevent or interfere with the growth, location, or planting of approved Public Trees;

All work performed under a permit shall be performed according to the *Urban Forestry Standards.*

The city arborist shall include such conditions on a permit as are necessary to fulfill the standards set out herein.

Response will generally be mailed to the applicant within 10 days and in no case longer than 20 days.

Each Tree Permit shall expire 60 days after its effective date. The city arborist may grant up to one extension not to exceed 30 days.

Page 16

**12.60.090 Time Limits.**  Whenever a number of days are specified in this title, or in any permit, condition of approval, notice issued or given as provided in this title, the number of days shall be construed as calendar days.  Where the last of the specified number of days falls on a weekend, holiday, or other day city hall is closed, the time limit will extend to the following working day.

## Chapter 12.70 Appeals

Sections
12.70.010    Appeal of City Arborist Decision.
12.70.020    Notice of Commission Hearing
12.70.030    Decision of the Natural Resources Commission
12.70.040    Review by City Council
12.70.050    Notice of Council Hearing
12.70.060    Decision of the City Council
12.70.070    Further Action

**12.70.010    Appeal of city arborist decision.**  Any Person aggrieved by or objecting to any exercise of authority by the city arborist under this title shall have the right of appeal to the natural resources commission. Filing a timely and complete appeal with the city clerk shall suspend any permit or approval until the hearing on the appeal has been completed.  A complete appeal shall include the:  action being appealed, property address or location of the Tree impacted by the action; name and contact information of the Person or Persons filing the appeal; reasons for the appeal; and any fee for such appeal as adopted by the city council and included in the City's master fee schedule, which is available at city hall and on the City's website.

(a) Appeals of the city arborist's action hereunder shall proceed as follows:

(1)    Any applicant or interested person may, upon payment of a fee established by the council, appeal a permit decision to the natural resources commission within the 10-day posting period.  The appeal will suspend a permit approval pending the commission's hearing on the appeal.

(2)    Within 60 days of receipt of an appeal, the natural resources commission will hold a public hearing on the appeal unless the appeal is continued for good cause demonstrated.  At least 10 calendar days prior to the hearing, the property on which the Tree or Trees subject to the appeal are located shall be posted with a notice of the date and time of the public hearing.  Two identical notices shall be posted on public property within 200 feet of the property on which the subject Tree or Trees are located, in positions clearly visible to the public.  The party appealing shall be notified by mail of the date and time of the hearing.

(3)    The natural resources commission may affirm, reverse, or modify the action of the city arborist, and in so acting, apply the standards set out in subsection (c) of this section.

(4)    The action of the natural resources commission may be appealed to the city council within 10 calendar days.

(5)    Once the city council has considered an application for Removal or alteration of a Tree, all further applications relating to that Tree shall be made directly to the council.

**12.70.020    Notice of Commission Hearing.** Within 45 days of receipt of an appeal by the city clerk, the natural resources commission shall hold a public hearing on the appeal unless such time is continued by the commission for good cause demonstrated. At least 10 days prior to the hearing, the property on which the Tree or Trees subject to appeal are located shall be posted with notice of the time and date of the hearing at or near the subject Tree or Trees. Two identical notices shall be posted by the city arborist on public property within 200 feet of the property on which the Tree or Trees are located, in positions clearly visible to the public. The subject Tree or Trees shall be marked with a bright ribbon around the trunk. The property owner and party appealing shall be notified by mail of the date and time of the hearing.

**12.70.030    Decision of the Natural Resources Commission.** The natural resources commission may affirm, reverse, or modify the decision and/or the action of the city arborist and, in so doing, shall apply the findings set out in Section 12.10.020 of this title and the *Urban Forestry Standards..*

**12.70.040    Review by City Council.** The decision of the natural resources commission may be appealed to the city council within 10 days by filing the appeal in writing, together with the fee set forth in the City's master fee schedule, with the city clerk.  Filing of this appeal shall suspend any permit or approval until the hearing on the appeal has been completed.

**12.70.050    Notice of Council Hearing.** Within 30 days of receipt of an appeal, or its next regular meeting, the city council shall hold a public hearing on the appeal unless such time is continued for good cause demonstrated. At least 10 days prior to the hearing, the property on which the Tree or Trees subject to the appeal are located shall be posted with a notice of the date and time of the public hearing. Two identical notices shall be posted on public property within 200 feet of the property on which the subject Tree or Trees are located, in positions clearly visible to the public. The property owner and party appealing shall be notified by mail of the date and time of the hearing.

**12.70.060    Decision of the City Council.** The council may affirm, reverse, or modify the decision of the natural resources commission, and/or the action of the city arborist and, in so doing, shall apply the findings set out in Section 12.10.020 of this title and the *Urban Forestry Standards.*

**12.70.070    Further Action.** Once the natural resources commission or city council has considered, on appeal, an application for Removal or alteration of a Tree(s), all further applications relating to that Tree shall be made directly to that same appeal authority.

SECTION 6.  In accord with Article 15 of the City Charter, this ordinance shall become effective on the thirtieth (30th) day following passage and adoption hereof.

PASSED AND ADOPTED BY THE COUNCIL OF THE CITY OF PACIFIC GROVE THIS 17th day of October, 2012, by the following vote:

AYES:          Councilmembers Kampe, Cohen, Cuneo, and Fischer.

NOES:          Mayor Garcia and Councilmember Miller

ABSENT:     Councilmember Huitt

APPROVED:

CARMELITA GARCIA, Mayor

ATTEST:

DAVID CONCEPCION, City Clerk

APPROVED AS TO FORM:

DAVID C. LAREDO, City Attorney

**Certified True Copy**
I hereby certify that this is a true and exact copy of the original document
Dated: _July 1, 2024_
City Clerk: _____

Page 19

# EXHIBIT B

### ORDINANCE NO. 13 -013
### AN ORDINANCE OF THE CITY OF PACIFIC GROVE
### AMENDING PACIFIC GROVE MUNICIPAL CODE
### CHAPTERS 12.10 TO 12.70 – TREES AND THE URBAN FOREST

**WHEREAS,** On October 17, 2012, the City Council adopted Chapters 12.10 to 12.70 – Trees and the Urban Forest and the *Urban Forestry Standards*; and

**WHEREAS,** Chapters 12.10 to 12.70 – Trees and the Urban Forest and the *Urban Forestry Standards* with the intent to improve the City's overall management and improvement of the urban forest; and

**WHEREAS,** the implementation of Chapters 12.10 to 12.70 – Trees and the Urban Forest and the *Urban Forestry Standards* has been monitored since going into effect on November 17, 2012; and

**WHEREAS,** the proposed amendments to Chapters 12.10 to 12.70 – Trees and the Urban Forest and the *Urban Forestry Standards* are intended to provide added protection by adding a category of trees that require permits for removal and by making procedural clarifications; and

**WHEREAS,** Notice of the city council public hearing on the second reading of the draft ordinance was published in the Monterey County Herald on August 1, 2013; and

**WHEREAS,** this ordinance amends Municipal Code Chapters 12.10 to 12.70 – Trees and the Urban Forest; and

**WHEREAS,** these regulations are a primary tool used by the City to carry out the goals, objectives, and policies of the Pacific Grove General Plan and Local Coastal Program (LCP). The Pacific Grove city council intends that these regulations be consistent with the City's General Plan and LCP, and that any land use, subdivision, or development approved in compliance with these regulations will also be consistent with the General Plan and LCP; and

**WHEREAS,** in the enactment of this ordinance, the City followed the guidelines adopted by the State of California and published in the California Code of Regulations, Title 14, Section 15000, et seq.; and

**WHEREAS,** in the course of the review of the draft Ordinance, the amendments proposed by this ordinance do not result in any new significant impacts to the environment because they are either more protective or procedural in nature; and

**WHEREAS,** the City prepared an Initial Study and Mitigated Negative Declaration to review ordinance pursuant to the California Environmental Quality Act (CEQA), and this Ordinance has been mitigated to a point where the proposed project will not have the potential to

1

**EXHIBIT B**

significantly degrade the environment; will have no significant impact on long-term environmental goals; will have no significant cumulative effect upon the environment; and will not cause substantial adverse effects on human beings, either directly or indirectly.

**NOW, THEREFORE, BE IT ORDAINED BY THE COUNCIL OF THE CITY OF PACIFIC GROVE:**

SECTION 1.  The foregoing recitals are adopted as findings of the City Council as though set forth fully herein.

SECTION 2.  If any provision, section, paragraph, sentence, clause, or phrase of this ordinance, or any part thereof, or the application thereof to any person or circumstance is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Ordinance, or any part thereof, or its application to other persons or circumstances. The City Council hereby declares that it would have passed and adopted each provision, section, paragraph, subparagraph, sentence, clause, or phrase thereof, irrespective of the fact that any one or more sections, paragraphs, subparagraphs, sentences, clauses, or phrases, or the application thereof to any person or circumstance, be declared invalid or unconstitutional.

SECTION 3.  Pacific Grove Municipal Code Chapters 12.10, 12.20, 12.30, 12.40, 12.50, 12.60, and 12.70 are amended shall be amended by the addition of all text shown in bold, italic text (***bold, italic text***) or the deletion of all text shown in strikeout (~~**strikeout text**~~), as follows:

**Chapter 12.10**
**PURPOSE, DEFINITIONS, APPLICABILITY, AND EFFECT**

~~Sections:~~

~~12.10.010   Purpose.~~

~~12.10.020   Findings.~~

~~12.10.030   Definitions.~~

~~12.10.040   Applicability, conflicts, and other requirements.~~

~~12.10.050   Authority and responsibility.~~

~~12.10.060   Enforcement.~~

**12.10.010 Purpose.**

2

(a) The purpose of this title is to facilitate the protection, preservation, and restoration of Pacific Grove's urban forest; and enhance the visual and aesthetic uniqueness of Pacific Grove, in accordance with the city of Pacific Grove General Plan.

(b) Accordingly, this title provides regulations relating to the removal and pruning of Trees in public and private areas, to safeguard life, limb, health, property, and public welfare, by managing the urban forest pursuant to these regulations and the Urban Forestry Standards, and by developing programs for the urban forest of the city of Pacific Grove.

(c) This code is adopted pursuant to the authority granted by Section 7 of Article XI of the State Constitution to a city to make and enforce such local, police, sanitary, and other regulations as are not in conflict with the general laws of the state. [Ord. 12-017 § 6, 2012].

## 12.10.020 Findings.

The city council makes the following general findings regarding the relationship between health, safety, and general welfare, and the selection, planting, conservation, protection, and maintenance of trees in public and private areas as addressed in this chapter. These shall be the same findings as required to be made for a permit application for Protected Tree removal and replacement.

(a) Trees are a valuable long-term community asset, and tend to increase property values.

(b) Trees protect us from climatic extremes. They recycle air and water, absorb carbon dioxide and release oxygen, provide shade and windbreak protection, and can potentially moderate temperatures for an entire neighborhood or community.

(c) Trees can improve human health by absorbing air pollution and trapping dust. In addition, they buffer noise from traffic and other sources.

(d) Trees diffuse the effects of rain that weather houses, erode topsoil, and cause flooding. They provide enrichment of the soil for more plant growth.

(e) Trees reduce the volume and slow the velocity of storm drainage and dry weather flows. They also are able to filter out many contaminants that would otherwise end up in the ocean.

(f) Trees provide habitat for wildlife.

(g) Trees contribute to the pleasantness and serenity of neighborhoods.

(h) The presence of Trees can do much to reduce the stress of modern living.

(i) Trees may enhance the architectural character of a neighborhood, accent or soften the effect of structures, promote visual formality and aesthetic interest, and screen undesirable views.

3

The above general findings are applicable when the health of Trees is preserved and the safety and general welfare of the public are observed. Healthy Trees are achieved when the right Trees are planted in the right location and are properly maintained. [Ord. 12-017 § 6, 2012].

**12.10.030 Definitions.**

For the purposes of this title, the definitions in the Urban Forestry Standards shall be the same as for the following regulations issued to implement this title. Terms defined in the Urban Forestry Standards are indicated with initial capital letters when used in this title. See www.ci.pg.ca.us\UFS-Definitions. [Ord. 12-017 § 6, 2012].

For the purposes of this title, the definitions in the Urban Forestry Standards shall be the same as for the following regulations issued to implement this title. Terms defined in the Urban Forestry Standards are indicated with initial capital letters when used in this title. [Ord. 12-017 § 6, 2012].

**12.10.040 Applicability, conflicts, and other requirements.**

(a) Applicability. This title applies to all trees within the city of Pacific Grove, except on Federal lands exempt from these standards.

(b) Conflicts. If conflicts occur between this title and PGMC Title 18 (Buildings and Construction) or Title 23 (Zoning), or the Local Coastal Program, the more protective requirements shall prevail. If conflicts occur between this title and other titles of the PGMC, the Urban Forestry Standards, or other city regulations, this title shall prevail.

(c) Liability. Nothing contained in this title, within the adopted Urban Forestry Standards, other management programs, an adopted Street Tree landscaping plan, or other city document shall be deemed to impose any liability for duty of care or for damages upon the city, its officers, or employees, nor shall it relieve the owner of private property from the duty to keep a Protected Tree on his property or under his control, in such condition as to prevent it from constituting a hazard or an impediment to travel or vision upon any street, park, boulevard, alley, or public place within the city.

(d) Severability. Should any part or provision of this title be declared by a court of competent jurisdiction to be invalid, the same shall not affect the validity of this title as a whole or any part thereof other than the part held to be invalid.

(e) Adoption of Standards. The city hereby adopts the Urban Forestry Standards, which may be amended from time to time.

(f) Adoption of Management Programs. The city may also adopt management programs, lists of appropriate tree species, Public or Street Tree landscaping plans, and other standards for the planting, maintenance, and removal of Trees on public lands. All work performed under this title shall be performed in accordance therewith. [Ord. 12-017 § 6, 2012].

**12.10.050 Authority and responsibility.**

4

(a) Generally. The Person in possession of Public Property and the owner of any private property shall have a duty to keep the Protected Trees upon the property and under their control in a safe and healthy condition.

The city shall be responsible for the maintenance of all Public and Street Trees. Pruning, other maintenance, and the replacement of Street Trees shall generally be the responsibility of the city and shall be at city's expense. Property owners may maintain, at their initiative, Street Trees on their property~.~ ~s~Such maintenance shall be in full conformance with the Urban Forestry Standards.

Pruning, condition assessment, and other maintenance by a Qualified Professional, and replacement of Trees on private property shall generally be the responsibility of the property owner(s) and shall be at property owner's expense. Any Person who determines that a Tree located on property possessed, owned, or controlled by them is a danger to the safety of themselves, others, or structural improvements on site or off site shall have an obligation to secure the area around the Tree, support the Tree, or remove the Tree, as appropriate, to safeguard both Persons and improvements from harm. In determining the level of risk and urgency to address a potential danger, the requirements under Chapter 12.40 PGMC shall also apply.

It is the responsibility of all Persons owning any land within the city to keep all private Trees that extend over any public street or walkway pruned so as to remove any foliage encroaching into space above a street to a height of 14 feet, and above sidewalk areas to a height of eight feet. The city holds the same responsibility for Street Trees and other Public Trees.

Any person claiming both financial and physical inability to perform the duties set out in this section may petition the city manager for relief. If the city manager concurs that such inability exists, the city manager shall direct city crews to perform the required work.

(b) City Staff. The city manager, through the departments of public works and community development, shall be responsible for the ~development~ *establishment* and maintenance of standards necessary for implementation of this title, known as the Urban Forestry Standards. The city arborist and public works director, among other duties, shall issue Tree maintenance and removal permits, oversee implementation of the Urban Forestry Standards and other management activities, and monitor and evaluate the effectiveness of this title.

(c) ~Natural Resources Commission~*Beautification and Natural Resources Commission*. The ~natural resources commission~*Beautification and Natural Resources Commission* shall develop and maintain lists of Trees recommended for or discouraged for use as described in Landscape Trees for Pacific Grove. The commission shall make recommendations to the city council after consultation with city staff, arborists, and nursery operators familiar with the subjects of such plantings.

The ~natural resources commission~*Beautification and Natural Resources Commission* shall prepare a Street Tree landscaping plan setting forth the types and kinds of Trees, especially

recommending native species that are Suitable and desirable for planting along Public Streets within the city.

Thereafter, the commission shall from time to time recommend to the city council updates covering the same subjects, each of which shall be complete in itself. Such lists shall be made available at city hall and shall be posted on the city's website.

(d) Utilities. Public and private utilities that have easements within the city-owned Right-of-Way shall be responsible for Tree management and appropriate pruning consistent with this title and the Urban Forestry Standards in order to protect critical infrastructure, by obtaining a city-wide permit, in consultation with the city arborist.

(e) California Department of Transportation Right-of-Way. Within the State Highway 68 corridor, the California Department of Transportation shall have authority to manage Trees within the state-owned Right-of-Way, and is encouraged to implement Tree management programs consistent with this title and the Urban Forestry Standards. [Ord. 12-017 § 6, 2012].

**12.10.060 Enforcement.**

Enforcement of this title shall be in accordance with PGMC Title 1. [Ord. 12-017 § 6, 2012].

**Chapter 12.20**
**PROTECTED TREES**

**12.20.010 Overall canopy coverage.**

The entire community benefits from a healthy and full Tree canopy and root system. The city of Pacific Grove shall strive to achieve a 25-year city-wide canopy cover target to maintain the existing canopy cover with the goal of a total canopy cover of 33 percent. The city shall develop and implement programs to maximize opportunities for the planting of Public Trees. The city shall encourage reporting on the removal of non-Protected Trees to track changes in the overall canopy coverage. [Ord. 12-017 § 6, 2012].

**12.20.020 Categories of Protected Trees.**

(a) ~~Four~~ *Five* categories of Trees are protected as specified below:

(1) Native Trees. All Gowen cypress, regardless of size; all Coast live oak, Monterey cypress, Shore pine*, Torrey pine*, and Monterey pine six inches or greater in trunk diameter, measured at 54 inches above native grade.

*(2) All Other Private Trees.  In addition to (a)(1), all other trees on private property, regardless of species, twelve inches or greater in trunk diameter, measured at 54 inches above native grade.*

6

(~~2~~3) Monarch Butterfly Habitat Trees. All Trees in or within 100 yards of designated Monarch Sanctuaries. For the purposes of this title, the following sites are designated as Monarch Sanctuaries, serving as official Pacific Grove monarch butterfly over-wintering sites:

(A) Monarch Grove Sanctuary. That portion of land bordered on the east and west by Ridge Road and Grove Acre Avenue, respectively, on the south by Short Street, and on the north by the northerly boundary of assessor's parcel numbers 006-361-30-031, -032, -033, and -034, extended from Grove Acre easterly to Ridge Road.

(B) Washington Park Site. That portion of land bordered on the east and west by Alder Street and Melrose Avenue, respectively, on the north by Pine Avenue, and on the south by the imaginary extension of Junipero Avenue westerly from Alder to Melrose.

(~~3~~4) Public Trees. All Trees on Public Property six inches or greater in trunk diameter, measured at 54 inches above native grade, and all Street Trees, regardless of size.

(4~~5~~) Designated Trees. All Trees that ***are otherwise Protected and*** ~~are specifically designated to be saved and protected on public or private property during~~ ***will be impacted as a result of*** Development***, both proposed for pruning or removal and where the Development will impact the critical root zone of the tree that requires protection during construction,*** and all Trees otherwise identified – during Development or otherwise – for special protection by the property owner. Trees that are proposed to be removed as part of a Development project shall be ***processed as part of the community development permit application and approval process, and*** replaced in accordance with this chapter, Chapter 12.30 PGMC, and the Urban Forestry Standards.

(b) Nothing in this title limits or modifies the existing authority of the city under PGMC Title 23 (Zoning) to require Trees not covered by this title to be identified, retained, protected, and/or planted as conditions of the approval of Development. ~~[Ord. 12-017 § 6, 2012].~~

**12.20.030 Planting and maintenance of Protected Trees.**

(a) The city, its residents, and its property owners benefit by having the right Tree planted in the right place. Native Trees are preferred~~, where Feasible~~. Trees to be planted should be selected from a list of appropriate landscape Trees for Pacific Grove, whenever possible. The planting and maintenance of Protected Trees shall be in accordance with the city's Urban Forestry Standards.

(b) Planting of Public and Street Trees shall be in conformance with an approved management plan for Trees on public property, including a Street Tree landscaping plan, developed and updated from time to time by the ~~natural resources commission~~***Beautification and Natural Resources Commission*** and approved by the city council. Street Tree plantings shall be considered first from the viewpoint of the people passing on or using the Streets, the benefits to storm water management, the extension of pavement life due to the shade they provide, the adjacent property owner, and from the other broader community benefits. Of secondary

7

consideration is the enhancement, embellishment, or other benefit of the properties abutting the Street or public property. [Ord. 12-017 § 6, 2012].

**12.20.040 Pruning and Removal of Protected Trees.**

(a) Substantial Pruning or Removal of any Protected Tree requires a permit, as described in Chapter 12.60 PGMC (Permit Application and Processing), except in an Emergency. All such work shall be done under the direction of the city arborist. A Tree that serves as part of a windbreak system, or assists in storm water drainage or the avoidance of soil erosion, or serves as a component of a wildlife habitat, is to be preserved if Feasible. Acceptable criteria for Substantial Pruning or Removal of any Protected Tree are as follows:

(1) The Tree Risk Assessment Level is "High" or "Extreme" (see PGMC 12.40.020 (Actions to be undertaken for dead Trees and Trees assessed as High-Risk)) and there are not more cost-effective remedial solutions.

(2) The Tree is causing or is projected to cause significant damage to hardscape (house foundations, driveways, retaining walls, patios, etc.), utility service lines, or infrastructure (sidewalk, curb, storm drain, Street, etc.) and there are not more cost-effective remedial solutions.

(3) The Tree is within the fuel management zone around an occupancy, or is within a Very High Fire Hazard Severity Zone, as defined by CalFire, and such work is necessary to reduce the risks due to wildfire (see the Urban Forestry Standards, Flammable Fuel Management).

(4) The Tree is determined to be a Nuisance (see PGMC 12.40.030), and there are not more cost-effective remedial solutions.

(b) A permit is not required for Pruning of less than 25 percent of the live branches of the entire Tree within a 12-month period; and/or cutting or Removal of any live limb with a diameter less than six inches or a circumference less than 19 inches at any point on such limb, or cutting or removal of roots less than four inches in diameter.

(c) Pruning or Removal of Monarch Butterfly Habitat Trees shall be prohibited except as prescribed in the approved Monarch Sanctuary Habitat Management Plan or upon a finding by the city council that such is necessary for proper maintenance of the site or for public health, safety, or welfare.

(d) Pruning or Removal of Trees within 100 yards of any boundary of a Monarch Sanctuary shall be prohibited during the months of October through April unless deemed necessary by the *city arborist and confirmed by the* public works director for public health, safety, or welfare. Any Person aggrieved by or objecting to any exercise of authority by the public works director under this section shall have the right of appeal to the city council in accordance with Chapter 12.70 PGMC.

(e) No Protected Tree shall be pruned to an extent that destroys its identity as a Tree, unless conditions for removal exist and the Tree is to remain as a snag *for the purpose of wildlife habitat*.

(f) A Protected Tree shall not be Substantially Pruned or Removed for the purpose of securing or improving a view, for acquiring more sunlight or air, or to reduce organic litter, unless the Tree is to be replaced, subject to conditions determined by the city arborist. ~~Protected Trees may be substantially pruned in order to provide a framed or filtered view.~~ The city shall strive to preserve view corridors, as defined in the General Plan, through the maintenance and pruning of Public Trees and by encouraging private property owners to maintain and prune their Trees.

(g) A Protected Tree shall not be Removed solely because it is diseased if the disease is readily curable or is not spreading. In cases where an applicant for a Tree permit feels that the Tree is diseased, the city arborist may require an analysis of the Tree to determine the type, extent, and degree to which the disease directly affects the Tree. Such testing shall be performed by an independent expert chosen by agreement of the applicant and city arborist. Cost of the analysis shall be borne by the applicant. ~~[Ord. 12-017 § 6, 2012].~~

## 12.20.050 Public Tree protection.

Unless authorized by permit, no person shall:

(a) Remove, Top, or in any way damage, destroy, injure, or mutilate a Public Tree.

(b) Fasten any sign, wire, or injurious material to any Public Tree, other than a Public Tree under PGMC 12.60.050.

(c) Excavate any ditch or tunnel, or place concrete or other pavement, within the Critical Root Zone of any Public Tree. ~~[Ord. 12-017 § 6, 2012].~~

## 12.20.060 Wildlife protection.

Tree pruning and removal activities shall take place outside the nesting periods of listed threatened, endangered, or special status species as specified by the California Department of Fish and Game or U.S. Fish and Wildlife Service. Upon the discovering of any large nest, property owners and contractors shall consult the city arborist or a qualified biologist for appropriate pruning and removal times, best management practices, and inspections to ensure wildlife protection measures are being followed. ~~[Ord. 12-017 § 6, 2012].~~

## 12.20.070 Replacement of Protected Trees.

Removal of any Protected Tree on a property that will continue to meet the canopy coverage goals in this chapter after the Removal shall not require replacement. For the removal of all other Protected Trees, whether living or dead, as well as in those cases where the tree is being left as a snag, one Replacement Tree shall be required for each Protected Tree Removed.

Replacement Trees shall be of a Suitable species and planted in a Suitable location, as agreed to by the city arborist and the property owner. If agreement cannot be reached, the ~~natural resources commission~~*Beautification and Natural Resources Commission* will determine the matter. Owners are encouraged to select Replacement Trees from the approved list identified in the Landscape Trees for Pacific Grove. Invasive Trees will not be approved. For Upper Canopy Trees on lots *with available landscape area* in excess of 4 2,000 square feet, at least half of all replacement Trees shall be ~~a Gowen Cypress, Coast live oak, Coast redwood, Monterey cypress, Monterey pine, or Torrey pine~~*Native Trees as defined in Section 12.20.020(a)(1)*.

The city arborist or designee shall inspect replacement Trees during the first two years after planting to monitor survivability and growth progress. Dead Trees or Trees in an irreversible decline shall be replaced by the property owner at the owner's expense. A new species and replacement planting location may be agreed to at that time. ~~[Ord. 12-017 § 6, 2012].~~

**12.20.080 Canopy coverage goals.**

The desired overall nature and scope of Tree canopy to achieve a mixed, healthy urban forest is as follows:

(a) Residential Properties. The canopy coverage goal for Trees on residential properties shall be based on the available landscape area, if feasible, as follows:

| Available Landscape Area | Upper Canopy Trees | Lower Canopy Trees |
|---|---|---|
| Up to 2,000 square feet | 0 – 1 | 1 – 2 |
| 2,001 – 3,000 square feet | 2 | 2 – 3 |
| 3,001 – 4,000 square feet | 3 | 3 – 4 |
| Over 4,000 square feet | Variable | Variable |

In accordance with PGMC Title 23, Zoning, "site coverage" means the sum of building coverage plus areas covered by impervious surfaces. In residential zoning districts, maximum site coverage is 60 percent. For proposed developments on residential properties with site coverage exceeding 60 percent, Owners shall be encouraged to remove impervious surface area and to plant Trees to achieve the canopy coverage goal where appropriate.

On residential properties where the number of Trees after proposed Removal(s) would exceed the canopy coverage goals above, no Replacement Tree(s) shall be required.

(b) Commercial and Governmental Properties. One Tree per 30 feet of frontage, with a minimum of two Trees, if space is available. In parks and open space, the city shall strive to achieve at least 33 percent canopy coverage, where appropriate.

(c) Parking Lots. Thirty-three percent of paved parking lots shall be shaded with tree canopies, and in conjunction with low impact development landscaping for stormwater management. ~~[Ord. 12-017 § 6, 2012].~~

10

## 12.20.090 Appropriate variation for individual situations.

While the overall canopy coverage standards shall serve as the community-wide desired levels of forest cover, the appropriate configuration (number, size, species, and placement) for a given parcel will depend on a series of interrelated factors, as determined by the city arborist:

(a) Neighborhood, zoning district, and parcel objectives and aesthetics;

(b) Existing canopy coverage on the lot;

(c) Adjacent properties and land uses;

(d) Size and location of structures;

(e) Existing infrastructure and potential for adverse impacts;

(f) Topography and soil conditions;

(g) Stormwater management and erosion prevention;

(h) Windbreak potential;

(i) Viewshed protection;

(j) Wildlife habitat protection;

(k) Long-term health potential of the replacement Tree. [Ord. 12-017 § 6, 2012].

## 12.20.100 Alternatives when Protected Trees cannot be replaced on site.

In some circumstances, crowding or other physical constraints make it impossible or undesirable to replace a Protected Tree on site to meet the desired coverage levels.

(a) For replacement of Native Trees and Monarch Butterfly Trees, or removal of a Public Tree if initiated by a Private Party, a fee established by resolution of the city council shall be paid to the city of Pacific Grove and deposited into the Community Tree Program Fund.

(b) As established by the adopted fee schedule, a sum of money (an in-lieu fee) will be deposited in the Community Tree Program Fund, to be used solely for the planting and maintenance of Trees on city property.

Payment of in-lieu fees cannot be made as an alternative to replacement on site unless findings can be made that the Tree replacement planting is not Feasible, based on the criteria identified in PGMC 12.20.090 (Appropriate variation for individual situations). [Ord. 12-017 § 6, 2012].

11

## Chapter 12.30
## TREES AND DEVELOPMENT

### 12.30.010 Assessment of the Tree resources.

*All permit applications for Designated trees associated with Development shall be processed as a component of the community development permit application, and through the appropriate review authority for the project.* During the Development process, a Tree Resource Assessment shall be performed by a Qualified Professional, if deemed necessary by the city arborist, in accordance with the Urban Forestry Standards. This Qualified Professional will be designated the Project Arborist for the duration of the project. All costs associated with the Project Arborist shall be borne by the applicant.

The Development shall preserve, or mitigate for, the maximum number of Suitable individual Trees that exist on the site pre-development in accordance with the desired canopy in Chapter 12.20 PGMC, and shall identify any Designated Trees that would be Removed as a result of Development. Designated Trees shall be replaced as required by this title.

If Replacement of Designated Trees is not feasible, a sum of money (an in-lieu fee), to be assessed at the time of a Building Permit, shall be deposited into the Community Tree Program Fund. The in-lieu fee amount for Trees removed as a result of Development shall consider the value of the Tree using the most recent edition of the Guide for Plant Appraisal published by Council of Tree and Landscape Appraisers or comparable guide established by the International Society of Arboriculture, the remaining canopy coverage on the property, and appropriate variation for individual situations as described in PGMC 12.20.090. [Ord. 12-017 § 6, 2012].

### 12.30.020 Construction impact analysis.

Prior to issuance of a planning or building permit, the Project Arborist shall review grading, drainage, utility, building and landscape plans to determine impacts to individual Trees. Recommendations for alternative construction methods and preconstruction treatments shall be made. Critical Root Zone specifications, including a protection fencing plan, shall be completed, *as described in the Urban Forestry Standards. Conditions of approval, minimum Tree protection standards during construction, or other necessary* Mmitigation requirements for Designated Trees Removed due to construction impacts shall be determined.

All Critical Root Zone specifications recommended by the Project Arborist through review of planning or building permits shall be Conditions of Project Approval and delineated on construction drawings for the Building Permit. [Ord. 12-017 § 6, 2012].

12.30.030 Minimum Tree protection standards during construction.

All Development projects shall adhere to the most current version of the "American National Standards Institute A-300 (Part 5) Management of Trees and Shrubs during Site Planning, Site Development and Construction" and shall be required as conditions of approval for discretionary permits granted by the architectural review board or planning commission.

To avoid beetle infestation, the lower six feet of Monterey pine Trees scheduled for preservation shall be sprayed with an appropriate pesticide as recommended by a licensed pest control adviser.

All improvement plans for the project shall include accurate trunk locations, Critical Root Zones (CRZ), and Canopy Extents of all Trees, or groups of Trees, to be preserved within the Development area. Tree Protection measures, fencing locations, and Special Treatment Areas are to be clearly defined on approved architectural/site plans to be used in the field and to be on file with the community development department.

The Project Arborist shall verify that all preconstruction conditions have been met (Tree fencing, erosion control, pruning, pre-construction treatments, etc.) and are in place. The Project Arborist may require the construction superintendent, or the demolition, grading, and underground contractors, to meet at the site prior to beginning work. This pre-construction site meeting shall be held to review and agree on procedures and Tree protection measures, as well as to establish haul routes, staging areas, contacts, watering requirements, etc. [Ord. 12-017 § 6, 2012].

**Chapter 12.40**
**HIGH-RISK TREES AND NUISANCE TREES**

Sections:

12.40.010   High-Risk Trees.

12.40.020   Actions to be undertaken for dead Trees and Trees assessed as High-Risk.

12.40.030   Nuisance Trees.

12.40.040   Abatement of nuisance.

**12.40.010 High-Risk Trees.**

A Tree with: a) one or more defects (e.g., disease, significant lean, large cracks, a shallow root system); and b) one or more targets (e.g., a use area or structure that would be struck or otherwise damaged in the event the Tree fell) imposes risks upon the community; or c) because of age, is nearing mortality. Risk levels shall be determined using the International Society of Arboriculture (ISA) Hazard Tree Evaluation rating system, as detailed in the Urban Forestry Standards.

Protected Trees in the Moderate Risk category, with a Potential Failure Rating of 6 to 8, shall be monitored by the property owner at least annually, as well as upon any significant change in condition. Actions should be considered that will ameliorate the risk and that may extend the life of the Tree. The Property Owner shall develop a course of action for any Protected Tree in the High-Risk category, with a Potential Failure Rating of 9 or higher. [Ord. 12-017 § 6, 2012].

**12.40.020 Actions to be undertaken for dead Trees and Trees assessed as High-Risk.**

13

When a Protected Tree is assessed as high-risk, the actions taken shall be those that Remove the risk while imposing the least impact on the Tree. Such actions may involve removing a critical limb, drastically reducing the Tree's overall height, or removing the Tree. If the situation is an Emergency, such that the Tree would be given a Potential Failure Rating of 12, Extreme, immediate action is necessary, including, for example, cordoning off the area, to ameliorate the risk, until the appropriate work can be completed. ***No notice shall be required for Emergency Tree Removal.*** [Ord. 12-017 § 6, 2012].

## 12.40.030 Nuisance Trees.

A Tree meeting one or more of the following criteria may be determined to be a public nuisance:

(a) Containing one or more limbs that obscure and impair the view of passing motorists, cyclists, or pedestrians so as to create a safety hazard;

(b) Limiting access to a fire hydrant or other facility necessary for public safety;

(c) Being irretrievably infested or infected with insect, borer, pest or disease that results in mortality, and that may infect or attack adjacent Trees, which cannot be preventatively treated;

(d) Being infected with Pitch Canker and having crown damage that exceeds 50 percent of total canopy volume, or has other crown damage exceeding 50 percent;

(e) Imposing a detriment to or crowding an adjacent Protected Tree;

(f) Being of an invasive species as identified by Landscape Trees for Pacific Grove, the California Invasive Plant Council, or the California Invasive Species Advisory Committee;

(g) Such other conditions as agreed to by the city arborist and the property owner. [Ord. 12-017 § 6, 2012].

## 12.40.040 Abatement of nuisance.

The property owner is responsible for addressing the nuisance, using appropriate techniques; if the Tree is a Protected Tree, the owner shall follow the processes detailed in Chapter 12.60 PGMC (Permit Application and Processing). When a Tree imposing a nuisance exists, for which the owner is not taking the appropriate action, the city arborist may give written notice thereof to the property owner, in the manner provided in PGMC 1.12.010 (Giving of notice). Such notice shall describe the condition, state the work necessary to remedy the condition, and shall specify the time within which the work is to be performed. After the giving of such notice a copy shall be conspicuously posted on the property upon which such public nuisance is alleged to exist. If, at the end of the time specified, such work has not been performed, the city may perform such work, and the cost thereof shall constitute a charge against such owner, and, if unpaid within 90 days of notice, shall be proposed to the city council as a lien on such property. [Ord. 12-017 § 6, 2012].

14

## Chapter 12.50
## TREE SERVICE CONTRACTORS

**12.50.010 Tree service contractors.**

All Tree service contractors providing Tree trimming and Removal services in the city of Pacific Grove shall:

(a) Hold a valid business license with the city of Pacific Grove, a current ***California State Contractors License***, a C61-D49 classification, and sufficient liability insurance; be bonded; and participate in the state's workers' compensation program.

(b) As a condition of obtaining or renewing a business license, meet with the city arborist at least once a year, in meetings to be set by the arborist, to review written standards for Tree trimming and Removal services in the city of Pacific Grove, and agree in writing to abide by such standards.

(c) Visibly mark all truck(s) and/or other vehicles utilized by the Tree Service Contractor with the contractor's name, state contractor's license number, business address, and phone number, in letters at least two inches high. [Ord. 12-017 § 6, 2012].

**12.50.020 Contractor adherence to this title and Urban Forestry Standards.**

If the city arborist finds work by a licensed Tree service contractor to be in conflict with this title or the Urban Forestry Standards, the arborist will review the concerns with the contractor. Continued failure to abide by these standards shall be grounds for revocation of the contractor's city business license. [Ord. 12-017 § 6, 2012].

## Chapter 12.60
## PERMIT APPLICATION AND PROCESSING

**12.60.010 Permit required for certain work.**

It shall be a violation of this title for anyone to Remove or cause to be Removed or Substantially Pruned a Protected Tree, except as allowed in this title and as addressed by the Urban Forestry Standards.In the absence of Development, Protected Trees shall not be ***pruned or*** removed unless determined by the city arborist. ***Applications for Removal of Designated Trees associated with Development shall be processed as part of the community development permit review and approval process for the project, as provided in PGMC Title 23, Zoning.***

The city arborist may require relevant information, including on the basis of a Tree Report prepared by a Qualified Professional for the applicant, if deemed necessary. The city arborist may determine that a Tree Report is not necessary if the Tree should be removed because it is dead, is high-risk, is a detriment to or crowding an adjacent Protected Tree, or constitutes a Nuisance under PGMC 12.40.030. [Ord. 12-017 § 6, 2012].

**12.60.020 Application for permit.**

Removal of a Protected Tree requires completion of a Tree removal application on forms provided by the city, accompanied by a fee as established in the city's master fee schedule. Any person desiring to do any of the work described in this title shall apply for such permit. [Ord. 12-017 § 6, 2012].

**12.60.030 Tree Report.**

The application for Removal of one or more Protected Trees shall include a written Tree Report, as specified in the Urban Forestry Standards. The Report shall be prepared for the applicant by a Qualified Professional and shall be submitted to the city to provide accurate information and a professional opinion regarding the condition, welfare, maintenance, preservation, and value of a Protected Tree . The Qualified Professional signing the Tree Report shall not be a principal or employee of a Tree service or other contract service provider that has a vested interest or conflict of interest in the subject project. [Ord. 12-017 § 6, 2012].

**12.60.040 Review of application.**

The city arborist shall review each application and may inspect the Tree and the surrounding area to determine whether, and under what conditions, the permit is to be granted.

The city arborist may refer a permit application to the natural resources commission*Beautification and Natural Resources Commission or other appropriate review body, in the case of Designated trees associated with Development,* for review and a determination on permit approval or denial.

Before approving any application, the city arborist shall be required to make the findings that the approved actions best further the purposes of this title, as specified in PGMC 12.10.020 (Findings). [Ord. 12-017 § 6, 2012].

**12.60.050 Public noticing requirements.**

A permit to Remove or substantially alter any Protected Tree is not effective until the tenth day following the date of posting the property on which the Tree or Trees subject to the permit are located, unless it is a*n Emergency or* nuisance pursuant to PGMC 12.40.030. The posted notice shall state that the permit approval may be appealed by any interested person during the 10-calendar-day posting period. City personnel shall post one notice on the subject Tree(s), two identical notices on public property within 200 feet of the property on which the subject Tree or Trees are located, in positions clearly visible to the public, and on the city's website. The subject Tree(s) must also be marked with a bright chartreuse ribbon around the trunk, which shall remain on the Tree until work has begun. All notices shall remain posted until all work is completed. *Noticing for Designated Trees shall follow the procedures as provided in PGMC Title 23, Zoning* [Ord. 12-017 § 6, 2012].

**12.60.060 Dead Trees and High-Risk Trees.**

16

All permit applications for dead Trees and High-Risk Trees with a Potential Failure Rating of 9 or above shall be Removed in a timely manner and processed within 10 days and requirements for a Tree Report, ~~posting~~*public noticing*, etc. shall be adjusted accordingly. ~~No fee shall be required for the removal of dead Trees. [Ord. 12-017 § 6, 2012].~~

## 12.60.070 New subdivisions – Cost of trees paid to city.

Before any street improvements in any new subdivision of real property in the city are accepted by the city council, the subdivider shall pay to the city the total cost for purchasing and planting of all trees to be planted along all streets in said subdivision. After receipt of said payment, the city will plant said trees at the proper time as determined by the city arborist. ~~[Ord. 12-017 § 6, 2012].~~

## 12.60.080 Issuance of permit.

If approved, a permit shall be issued authorizing a scope of work, so long as it:

(a) Will not create, continue, or aggravate any hazardous condition or public nuisance;

(b) Will not prevent or interfere with the growth, location, or planting of approved Public Trees.

All work performed under a permit shall be performed according to the Urban Forestry Standards.

The city arborist shall include such conditions on a permit as are necessary to fulfill the standards set out herein.

Response will generally be mailed to the applicant within 10 days and in no case longer than 20 days, *except in the case of Designated Trees associated with Development where processing timelines are as provided in PGMC Title 23, Zoning*, ~~timelines apply~~.

Each Tree permit shall expire 60 days after its effective date, *except in the case of Designated Trees associated with Development where permit expirations are as provided in PGMC Title 23, Zoning*. The city arborist may grant up to one extension not to exceed 30 days. ~~[Ord. 12-017 § 6, 2012].~~

## 12.60.090 Time limits.

Whenever a number of days is specified in this title, or in any permit, condition of approval, notice issued or given as provided in this title, the number of days shall be construed as calendar days. Where the last of the specified number of days falls on a weekend, holiday, or other day city hall is closed, the time limit will extend to the following working day. ~~[Ord. 12-017 § 6, 2012].~~

## Chapter 12.70
## APPEALS

*12.70.005 Appeal of decision associated with Development.*

*For Designated Trees associated with Development, any Person aggrieved by or objecting to any project decision by the approval authority shall have the right of appeal to the appeal authority as specified in PGMC Chapter 23.70. Filing a timely and complete appeal with the Community Development Department shall suspend any permit or approval until the hearing on the appeal has been completed.  Appeals associated with Development shall follow the appeal procedures provided in PGMC Chapter 23.74.*

**12.70.010 Appeal of city arborist decision.**

Any Person aggrieved by or objecting to any exercise of authority by the city arborist under this title shall have the right of appeal to the ~~natural resources commission~~*Beautification and Natural Resources Commission*. Filing a timely and complete appeal with the city clerk shall suspend any permit or approval until the hearing on the appeal has been completed. A complete appeal shall include the: action being appealed; property address or location of the Tree impacted by the action; name and contact information of the Person or Persons filing the appeal; reasons for the appeal; and any fee for such appeal as adopted by the city council and included in the city's master fee schedule, which is available at city hall and on the city's website.

(a) Appeals of the city arborist's action hereunder shall proceed as follows:

(1) Any applicant or interested person may, upon payment of a fee established by the council, appeal a permit decision to the ~~natural resources commission~~*Beautification and Natural Resources Commission* within the 10-day posting period. The appeal will suspend a permit approval pending the commission's hearing on the appeal.

(2) Within 60 days of receipt of an appeal, the ~~natural resources commission~~*Beautification and Natural Resources Commission* will hold a public hearing on the appeal unless the appeal is continued for good cause demonstrated. At least 10 calendar days prior to the hearing, the property on which the Tree or Trees subject to the appeal are located shall be posted with a notice of the date and time of the public hearing. Two identical notices shall be posted on public property within 200 feet of the property on which the subject Tree or Trees are located, in positions clearly visible to the public. The party appealing shall be notified by mail of the date and time of the hearing.

(3) The ~~natural resources commission~~*Beautification and Natural Resources Commission* may affirm, reverse, or modify the action of the city arborist, and in so acting, apply the standards set out in subsection (c) of this section.

(4) The action of the ~~natural resources commission~~*Beautification and Natural Resources Commission* may be appealed to the city council within 10 calendar days.

(5) Once the city council has considered an application for Removal or alteration of a Tree, all further applications relating to that Tree shall be made directly to the council. ~~[Ord. 12-017 § 6, 2012].~~

18

**12.70.020 Notice of commission hearing.**

~~Within 45 days of receipt of an appeal by the city clerk, the natural resources commission shall hold a public hearing on the appeal unless such time is continued by the commission for good cause demonstrated.~~ At least 10 days prior to the hearing, the property on which the Tree or Trees subject to appeal are located shall be posted with notice of the time and date of the hearing at or near the subject Tree or Trees. Two identical notices shall be posted by the city arborist on public property within 200 feet of the property on which the Tree or Trees are located, in positions clearly visible to the public. The subject Tree or Trees shall be marked with a bright ribbon around the trunk. The property owner and party appealing shall be notified by mail of the date and time of the hearing. ~~[Ord. 12-017 § 6, 2012]~~.

**12.70.030 Decision of the** ~~natural resources~~ ~~*commission*~~ ***Beautification and Natural Resources Commission*.**

The ~~natural resources commission~~ ***Beautification and Natural Resources Commission*** may affirm, reverse, or modify the decision and/or the action of the city arborist and, in so doing, shall apply the findings set out in PGMC 12.10.020 and the Urban Forestry Standards. ~~[Ord. 12-017 § 6, 2012]~~.

**12.70.040 Review by city council.**

The decision of the ~~natural resources commission~~ ***Beautification and Natural Resources Commission*** may be appealed to the city council within 10 days by filing the appeal in writing, together with the fee set forth in the city's master fee schedule, with the city clerk. Filing of this appeal shall suspend any permit or approval until the hearing on the appeal has been completed. ~~[Ord. 12-017 § 6, 2012]~~.

**12.70.050 Notice of council hearing.**

Within 30 days of receipt of an appeal, or its next regular meeting, the city council shall hold a public hearing on the appeal unless such time is continued for good cause demonstrated. At least 10 days prior to the hearing, the property on which the Tree or Trees subject to the appeal are located shall be posted with a notice of the date and time of the public hearing. Two identical notices shall be posted on public property within 200 feet of the property on which the subject Tree or Trees are located, in positions clearly visible to the public. The property owner and party appealing shall be notified by mail of the date and time of the hearing. ~~[Ord. 12-017 § 6, 2012]~~.

**12.70.060 Decision of the city council.**

The council may affirm, reverse, or modify the decision of the ~~natural resources commission~~ ***Beautification and Natural Resources Commission*** and/or the action of the city arborist and, in so doing, shall apply the findings set out in PGMC 12.10.020 and the Urban Forestry Standards. ~~[Ord. 12-017 § 6, 2012]~~.

**12.70.070 Further action.**

Once the ~~natural resources commission~~ *Beautification and Natural Resources Commission* or city council has considered, on appeal, an application for Removal or alteration of a Tree(s), all further applications relating to that Tree shall be made directly to that same appeal authority. ~~[Ord. 12-017 § 6, 2012].~~

SECTION 4. The City Manager is directed to execute all documents and to perform all other necessary City acts to implement this Ordinance.

SECTION 5. In accord with Article 15 of the City Charter, this ordinance shall become effective on the thirtieth (30th) day following passage and adoption hereof.

**PASSED AND ADOPTED** BY THE COUNCIL OF THE CITY OF PACIFIC GROVE this 7th day of August, 2013, by the following vote:

AYES:        Mayor Kampe & Councilmembers Cohen, Cuneo, Fischer, Huitt, Lucius & Miller

NOES:        None

ABSENT:    None

APPROVED:

*Bill Kampe*

BILL KAMPE, Mayor

ATTEST:

DAVID CONCEPCION, City Clerk

APPROVED AS TO FORM:

DAVID C. LAREDO, City Attorney

Certified True Copy
I hereby certify that this is a true and
exact copy of the original document
Dated: July 1, 2024
City Clerk: _____

20

## PROOF OF SERVICE

**Richard B. Fox v. City of Pacific Grove, et al.**
**Case No. 5:24-cv-03686-NC**

**STATE OF CALIFORNIA, COUNTY OF VENTURA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Ventura, State of California. My business address is 2310 East Ponderosa Drive, Suite 25, Camarillo, CA 93010-4747.

On July 11, 2024, I served true copies of the following document(s) described as **REQUEST FOR JUDICIAL NOTICE; DECLARATION OF CITY CLERK SANDRA KANDELL** on the interested parties in this action as follows:

Richard B. Fox                                    *Plaintiff in Pro Se*
485 Ocean View Blvd.
Pacific Grove, CA 93950
Telephone: 408.402.2452
Facsimile: 669.221.6281
Email: rbfmd@aol.com

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Burke, Williams & Sorensen, LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Camarillo, California.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address dwetters@bwslaw.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 11, 2024, at Camarillo, California.


/s/ Kathleen van Daalen Wetters
Kathleen van Daalen Wetters

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES