1  Richard B. Fox, Plaintiff *Pro Se*
   485 Ocean View Blvd.
2  Pacific Grove, CA 93950
   Tel: 408-402-2452
3  Fax: 669-221-6281
   rbfmd@aol.com
4

5

6

7              **UNITED STATES DISTRICT COURT**

               **NORTHERN DISTRICT OF CALIFORNIA**
8

9  | Richard B. Fox | **CASE NO. 5:24-cv-03686-EKL** |

10              Plaintiff

    vs.                    **PLAINTIFF'S MEMORANDUM OF**
11                         **POINTS AND AUTHORITIES IN**
    City of Pacific Grove, California,   **OPPOSITION TO DEFENDANTS'**
12  Bill Peake, Mayor, City of Pacific Grove,   **MOTION TO DISMISS AMENDED**
    California, City Pacific Grove California   **COMPLAINT**
13  City Council Members Joe Amelio, Debby
    Beck, Luke Coletti, Lori McDonnell,   Date:
14  Chaps Poduri, and Nick Smith,         Time:
                                          Place: Courtroom 7
15              Defendants                Judge: Hon. Eumi K. Lee

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MP&A IN OPPOSITION TO MOTION TO DISMISS - PAGE i

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    1.    Ripeness In A Land Takings Case Requires Nothing More Than A Showing That "There Is No Question About How The Regulations At Issue Apply To The Particular Land In Question," Shown Here By The Application Of Defendants' Permitting Process To Plaintiff's Land. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    2.    By Refusing Plaintiff's Offer To Either (1) Appeal The Tree Permitting Issue To The City Council, Or (2) Begin The Permitting Process Anew, Defendants Have Made A *De Facto* Final Decision On That Matter . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    3.    The Physical Occupation Of Plaintiff's Property For The Purpose Of Growing Pacific Grove's "Urban Forest" Is A Clear *Per Se* Taking Under The Fifth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# TABLE OF AUTHORITIES

**CASES**

*Cedar Point Nursery v. Hassid*, 141 S.Ct. 2063, 210 L.Ed.2d 369 (2021). . . . . . . . . . . . . . . . . . 6, 7

*Horne v. Dep't of Agric.*, 135 S.Ct. 2419, 192 L.Ed.2d 388, 576 U.S. 350 (2015) . . . . . . . . . . . . . 7

*Loretto v. Teleprompter Manhattan Catv Corp*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Pakdel v. City of S.F.,* 141 S.Ct. 2226, 2228, 210 L.Ed.2d 617 (2021) . . . . . . . . . . . . . . . . . . . . 4, 5

*Palazzolo v. Rhode Island* , 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) . . . . . . . 7

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Cress* , 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746 (1917). . . . . . . . . . . . . . . . . . . 7

*Yee v. City of Escondido*, 503 U.S. 519, 532 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STATUTES**

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 8

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed.R.Civ.P., Rules 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

Fed.R.Civ.P., Rules 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 7

**U.S. CONSTITUTIONAL AMENDMENTS**

Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 8

Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**OTHER AUTHORITIES**

Pacific Grove Municipal Code, Chapter 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

# INTRODUCTION

Plaintiff filed the Complaint in this case to assert an as-applied Fifth Amendment Takings Claim against the City of Pacific Grove, California, and the members of its city council, the Defendants in this matter, when the city refused to issue a permit to plaintiff to remove several nuisance trees from his private property. The permit was required under the city's tree ordinance, an ordinance adopted for the public purpose of preserving the city's "urban forest." Plaintiff asserts that the use of his private property for the public purpose of preserving the city's "urban forest" constitutes a "taking" under the Fifth Amendment, actionable as an infringement of his civil rights under 42 U.S.C. § 1983.

Defendants now move to dismiss under Fed.R.Civ.P. Rules 12(b)(1) and 12(b)(6), arguing principally that: (1) plaintiff's takings claim is not ripe because the city has never made a formal, final decision rejecting plaintiff's request for the tree removal permit, and (2) the city's tree regulations do not constitute "takings" under the Fifth Amendment.

Plaintiff opposes Defendants Motion To Dismiss on the grounds that: (1) his takings claim is now ripe because Defendants have met the "modest" requirement for a ripe Takings Claim in applying their regulations to Plaintiff's property by way of requiring a permit for the tree removal, and (2) government regulations that require that private property to be used for a public purpose, such as growing raisins or trees, constitute *per se* takings under relevant Supreme Court precedents.

For these reasons, Defendants' Motion To Dismiss should be denied in its entirety.

# FACTUAL BACKGROUND

The City of Pacific Grove has a chapter in its Municipal Code that regulates the removal of all trees in the city greater than a specified size, Pacific Grove Municipal Code, Chapter 12. Under Section 12.10(a), the purpose of that chapter is to:

> (a) The purpose of this title is to facilitate the protection, preservation, and restoration of Pacific Grove's urban forest; and enhance the visual and aesthetic uniqueness of Pacific Grove, in accordance with the city of Pacific Grove General Plan.[1]

In January of 2021 Plaintiff applied to the City of Pacific Grove for permission to remove several nuisance trees from his property in Pacific Grove, one of which had caused extensive

---

[1] Amended Complaint, Docket # 11, at § 9.

PLAINTIFF'S MP&A IN OPPOSITION TO MOTION TO DISMISS - PAGE 1

damage to the property's hardscape.[2] That request was granted by the city's tree inspector as to one tree and denied as to the others. *Id.*

On February 11, 2024 Plaintiff again applied for approval of one of the offending trees and on March 25, 2024 another.[3]

When, by April 29, 2024, Plaintiff had had no response at all to his applications by the City of Pacific Grove, he deemed this to be a constructive denial of his removal applications and filed an appeal of that constructive denial with the Beautification and Natural Resources Commission of the City of Pacific Grove, as provided under Chapter 12, Section 12.070.10 of the Pacific Grove Municipal Code. *Id.,* at § 16.

When, by May 23, 2024, Plaintiff had had no response from the City of Pacific Grove to that appeal to the Beautification and Natural Resources Commission of the City of Pacific Grove, he then sent a Demand Letter to the City Council of the City of Pacific Grove demanding that he either be compensated for the city's taking of his property for the public purpose of growing trees (preserving Pacific Grove's urban forest) or allowed to remove those trees. *Id.,* at § 18. The Demand Letter gave the City Council until June 13, 2024 to respond. *Id.*, at § 19. No response to that Demand Letter was ever received from the City Council by that date or since. *Id..*

On May 30, 2024 Plaintiff was notified that the Beautification and Natural Resources Commission would now hear his appeal, with the hearing date set as June 18, 2024. *Id.*, at § 20.

At the hearing of June 18, 2024 before the Beautification and Natural Resources Commission, plaintiff's request for the tree removal permit was denied. *Id.,* at § 21.

Plaintiff filed the Complaint in this case on June 20, 2024. *Id.,* at § 22, Dockett #1.

On July 11, 2024 Defendants moved to dismiss this case on, *inter alia,* lack of ripeness, claiming that the City had never made a final decision on Plaintiff's application for tree removal. *Id.,* at § 23.

On July 12, 2024 Plaintiff then requested an opportunity to appeal the decision of the Beautification and Natural Resources Commission to the City Council. *Id.,* at § 24. Plaintiff also offered to restart the entire permitting process anew and tendered a new permitting fee of $236.

---

[2] Complaint, Docket #1, at §§ 1, 4, 5, 13, 14, and 24.

[3] Amended Complaint, Docket # 11, at §§ 14-15.

PLAINTIFF'S MP&A IN OPPOSITION TO MOTION TO DISMISS - PAGE 2

On July 17, 2024 Plaintiff received an email from counsel for the City denying both Plaintiff's request for appeal to the City Council and his request to begin the process anew, including refunding the $236 permit application fee that Plaintiff had tendered.[4]

**PROCEDURAL HISTORY**

On June 20, 2024 Plaintiff commenced this action. *Id.* Docket # 1.

On July 11, 2024 Defendants moved to dismiss under FRCP Rule 12(b)(1)(lack of subject matter jurisdiction) and 12(b)(6)(failure to state a claim upon which relief came be granted). Docket # 9.

On July 25, 2024 Plaintiff filed an Amended Complaint presenting only one claim, an as-applied claim that the City's tree ordinance effectuates a taking of his property for the public purpose of protecting and maintaining the city's "urban forest." Docket # 11. Plaintiff's Amended Complaint asserts that this Court has subject matter jurisdiction over his as-applied takings claim under 42 U.S.C. § 1983.

On August 7, 2024 Defendants filed a Motion To Dismiss The Amended Complaint. Docket # 13.

Plaintiff now files this Opposition to Defendants Motion To Dismiss The Amended Complaint.

**ARGUMENT**

**1.   Ripeness In A Land Takings Case Requires Nothing More Than A Showing That "There Is No Question About How The Regulations At Issue Apply To The Particular Land In Question," Shown Here By The Application Of Defendants' Permitting Process To Plaintiff's Land**

In Defendant's Motion To Dismiss The Amended Complaint, they allege that:

(1) Plaintiff's as-applied takings claim under the Fifth and Fourteenth Amendments of the U.S. Constitution is not ripe, and therefore this Court lacks subject jurisdiction.[5]

Defendants then go on to argue that Plaintiff's takings claim is not ripe because he never got a final determination from the city on his request to remove the nuisance trees because he failed to appeal the denial of that request by the city's Beautification and Natural Resources Commission to the City Council of Pacific Grove.

---

[4] Amended Complaint, Exhibit 4.

[5] Motion To Dismiss The Amended Complaint. Docket # 13, at p. 2.

PLAINTIFF'S MP&A IN OPPOSITION TO MOTION TO DISMISS - PAGE 3

The Supreme Court's recent decision in *Pakdel* is relevant to the issue of ripeness in takings cases:

> When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a "final" decision...After all, until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation...In the decision below, however, the Ninth Circuit required petitioners to show not only that the San Francisco Department of Public Works had firmly rejected their request for a property law exemption (which they did show), but also that they had complied with the agency's administrative procedures for seeking relief. Because the latter requirement is at odds with "the settled rule ... that exhaustion of state remedies is not a prerequisite to an action under 42 U.S.C. § 1983...we vacate and remand.[6]

The relevance of *Pakdel* in this case is that the takings case plaintiff need not adhere to any particular administrative process as long as the plaintiff can show that the government reached a final decision in the matter of the taking.

The *Pakdel* Court made other important findings as to what suffices to show such a taking:

> ... the [divided Ninth Circuit] panel reasoned that this decision was not truly "final" because petitioners had made a belated request for an exemption at the end of the administrative process instead of timely seeking one "through the prescribed procedures." *Id.*, at 1166–1167 (explaining that petitioners waited "six months after [they] had obtained final approval of their conversion ... and seven months after they had committed to offering a lifetime lease"). In other words, a conclusive decision is not really "final" if the plaintiff did not give the agency the "opportunity to exercise its 'flexibility or discretion' " in reaching the decision.[7]

> We ... think that the Ninth Circuit's view of finality is incorrect. The finality requirement is relatively modest. *All a plaintiff must show is that "there [is] no question ... about how the 'regulations at issue apply to the particular land in question.'"*[8]

> ...nothing more than *de facto* finality is necessary. Once the government is committed to a position ... the dispute is ripe for judicial resolution.[9]

> ...administrative missteps do not defeat ripeness once the government has adopted its final position.[10]

Thus, under *Pakdel* and its "modest" requirement that plaintiff need only show is that "there [is] no question ... about how the 'regulations at issue apply to the particular land in question," the ripeness question to be decided here is not whether plaintiff complied with some

---

[6] *Pakdel v. City of S.F.,* 141 S.Ct. 2226, 2228, 210 L.Ed.2d 617 (2021)(citations omitted).

[7] *Id.,* at 2229.

[8] *Id.,* at 2230, citations omitted, emphasis added.

[9] *Id.,* at 2230.

[10] *Id.,* at 2231.

PLAINTIFF'S MP&A IN OPPOSITION TO MOTION TO DISMISS - PAGE 4

administrative procedures imposed by the Defendants, but only whether there remain any questions as to if or how the city's tree regulations apply to plaintiff's property. The answer, clearly, is that there is no question that, under the city's tree "regulations at issue [that] apply to the particular land in question," Plaintiff is not allowed to remove any "protected trees" from his property without the permission of the city. In other words, the issue here is not whether the city made a final decision to allow removal of trees, but whether the city made a final decision to apply its tree regulations to Plaintiff's property in the first place.

At the latest, the city showed that it had made a final decision to apply its tree regulations to Plaintiff's property when it accepted his application, and the application fee, for a permit, under those regulations, to remove the trees from his property. That is when, at the latest and under *Pakdel,* the "taking" of Plaintiff's property ripened to justiciability.[11]

This Court should deny Defendants' Motion To Dismiss the Amended Complaint on the basis of lack of ripeness for the above reasons.

**2. By Refusing Plaintiff's Offer To Either (1) Appeal The Tree Permitting Issue To The City Council, Or (2) Begin The Permitting Process Anew, Defendants Have Made A *De Facto* Final Decision On That Matter**

As held in *Pakdel,* "...nothing more than *de facto* finality is necessary. Once the government is committed to a position ... the dispute is ripe for judicial resolution."[12]

Here, Defendants have made just such a *de facto* final decision on the permitting issue by refusing to either: (1) allow an appeal of the permitting issue to the City Council, or (2) allow Plaintiff to begin the permitting process anew. Both simply reinforce the conclusion that the City has reached a *de facto* final decision in the matter.

**3. The Physical Occupation Of Plaintiff's Property For The Purpose Of Growing Pacific Grove's "Urban Forest" Is A Clear *Per Se* Taking Under The Fifth Amendment**

Defendants' Motion To Dismiss The Amended Complaint does not include any motion to

---

[11] In their argument to dismiss, Defendants cite four unpublished district court cases finding lack of ripeness due to alleged failure to show administrative finality. These cases all hinge on findings that those plaintiffs failed to complete necessary administrative procedures to establish ripeness. These four cases are inapposite because, here, Defendants admit, by their permitting process for terminating the takings of private property for growing protected trees, that city has already made a final decision to apply the city's tree "regulations at issue ... to the particular land at issue," thus making the case ripe for decision in a federal court.

[12] *Id.,* at 2230.

PLAINTIFF'S MP&A IN OPPOSITION TO MOTION TO DISMISS - PAGE 5

dismiss the Amended Complaint's claim as an as-applied takings claim. However, Defendants' MP&A makes that argument, even though it is not properly before the Court by motion. Nonetheless, Plaintiff will respond to it.

Defendants' argument, at its core, is this:

> Plaintiff alleges (argues) that PGMC chapter 12.20 affects a "physical appropriation" of, and an easement over his property by restricting his ability to remove his trees to achieve its purpose of preserving protected trees in violation of *Cedar Point* and *Loretto*. Compl. ¶ 47, p. 13, citing *Cedar Point*, 141 S. Ct. 2063, 2069 and *Loretto*, 458 U.S. 419, 426 (1982). Plaintiff has no claim under *Cedar Point* and *Loretto*, both of which involved laws that required property owners to allow third parties to enter and occupy their property. Specifically, in *Cedar Point*, the law granted union organizers a right of access to private property "for up to four 30-day periods in one calendar year." In *Loretto*, the law authorized cable television companies to install and permanently maintain cables on private property.
>
> Chapter 12.20 by its clear terms does no such thing. Rather, it simply restricts property owners from removing or pruning specified protected trees. An ordinance that merely regulates a property owner's use of property is "not "an unwanted physical occupation of [the] property," and "thus does not amount to a per se taking."*Yee v. City of Escondido*, 503 U.S. 519, 532 (1992).

First, Defendants have no authority for their argument that forcing a private property owner to grow trees for the benefit of the public does not constitute a taking. The citation to *Yee* is inapposite since it concerned a rental control ordinance, not a physical occupation with unwanted trees.

Second, the determining factors in *Cedar Point*[13] and *Loretto*[14] were not any requirements that third parties were allowed to *enter* private property; the determining factor was whether the regulations at issue allowed private property to be *occupied* for a public purpose. That is, the damages from the takings were not calculated upon the number of entries but upon the nature and duration of the occupancy.

The *Cedar Point* Court summed it up succinctly: "When the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation."[15]

The *Cedar Point* Court went on to observe that:

---

[13] *Cedar Point Nursery v. Hassid*, 141 S.Ct. 2063, 210 L.Ed.2d 369 (2021)

[14] *Loretto v. Teleprompter Manhattan Catv Corp*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982)

[15] *Cedar Point Nursery v. Hassid, supra*, at 2071.

PLAINTIFF'S MP&A IN OPPOSITION TO MOTION TO DISMISS - PAGE 6

> ...the government likewise effects a physical taking when it occupies property—say, by recurring flooding as a result of building a dam. See *United States v. Cress*, 243 U.S. 316, 327–328, 37 S.Ct. 380, 61 L.Ed. 746 (1917). These sorts of physical appropriations constitute the "clearest sort of taking," *Palazzolo v. Rhode Island*, 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001), and we assess them using a simple, per se rule: The government must pay for what it takes. See *Tahoe-Sierra*, 535 U.S. at 322, 122 S.Ct. 1465.[16]

Defendants' argument that it is not "occupying" Plaintiff's property but merely "regulating" its use fares no better under *Cedar Point*:

> Government action that physically appropriates property is no less a physical taking because it arises from a regulation. That explains why we held that an administrative reserve requirement compelling *raisin growers* to physically set aside a percentage of their crop for the government constituted a physical rather than a regulatory taking. *Horne*, 576 U.S. at 361, 135 S.Ct. 2419. The essential question is not, as the Ninth Circuit seemed to think, whether the government action at issue comes garbed as a regulation (or statute, or ordinance, or miscellaneous decree). It is whether the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property. See *Tahoe-Sierra*, 535 U.S. at 321–323, 122 S.Ct. 1465. Whenever a regulation results in a physical appropriation of property, a per se taking has occurred...[17]

Thus, whether the government appropriates private property to grow raisins or to grow "protected trees," and has "restricted a property owner's ability to use his own property," the result is the same, a "taking" has occurred and the government must pay for it.

Under *Cedar Point. Tahoe-Sierra, Horne,* and *Loretto,* the City of Pacific Grove's tree ordinance requiring Plaintiff to grow trees on his property for a public purpose and restricting Plaintiff's "ability to use his own property" constitutes a "taking" under the Fifth Amendment's Takings Clause, actionable under U.S.C. 42 § 1983, and requiring "just compensation" for that taking.

Therefore, Plaintiff has stated a takings claim sufficient to survive Defendants' Motion To Dismiss under Fed.R.Civ.P., Rules 12(b)(1) and 12(b)(6) and this Court should deny that motion.

## CONCLUSION

Plaintiff respectfully requests that this Court deny Defendants' Motion To Dismiss The Amended Complaint because:

(1) since the Defendants require a permit to terminate their taking of Plaintiff's private property for a public purpose, "there [is] no question ... about how the 'regulations at issue

---

[16] *Id.*

[17] *Id.,* at 2072 (emphasis added).

PLAINTIFF'S MP&A IN OPPOSITION TO MOTION TO DISMISS - PAGE 7

apply to the particular land in question,'" which is all that is necessary to meet the "modest," "*de facto,*" requirements for ripeness in a federal takings case, and

(2)    the taking of private real property for a public purpose, such as growing raisins or trees, is a *per se* taking under the Fifth Amendment, as applied to Defendants under the Fourteenth Amendment, and actionable as a civil rights violation under 42 U.S.C. § 1983.

Date:   August 21, 2024

*/s/ Richard B. Fox*

Richard B. Fox, Plaintiff *Pro Se*