UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD B. FOX,<br><br>   Plaintiff,<br><br>  v.<br><br>CITY OF PACIFIC GROVE, CALIFORNIA, et al.,<br><br>   Defendants. | Case No. 24-cv-03686-EKL<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 37 |

Plaintiff Richard B. Fox ("Fox") brings this action under the Takings Clause of the Fifth Amendment, claiming that the denial by the City of Pacific Grove Defendants (the "City") of his permit application to remove trees from his property constitutes a *per se* taking. The City moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Mot. to Dismiss, ECF No. 37 ("Mot."). The Court carefully reviewed the parties' briefs and heard argument on October 22, 2025. For the following reasons, the Court GRANTS the City's motion to dismiss for failure to state a claim and DISMISSES this action with prejudice.

**I. BACKGROUND**

This case is about two unwanted trees on Fox's property. *See* Second Am. Compl. ¶¶ 1-2, ECF No. 36 ("Compl."). "Tree #1 is a very large Norfolk Island pine, a non-native species." *Id.* ¶¶ 3, 5. "Tree #2 is a smaller Coastal Oak, a native species." *Id.* ¶ 10. Fox complains that the trees have caused "major damage" to a retaining wall and have "cracked and lifted up [his] driveway so that it is impassable." Compl. Ex. 8. According to Fox's long-time neighbor, tree #1 was planted in about 1991. *Id.* ¶ 6. The complaint does not specify who planted these trees. *See* 1/15/25 Hr'g Tr. 5:4-5, ECF No. 27 (Fox: "We don't know who planted the trees, but as far as I know, the City did not plant the trees.").

The two unwanted trees are protected by Title 12 of the Pacific Grove Municipal Code,[1] captioned "Trees and the Urban Forest," which regulates the removal of trees located on both public and private lands within the city. *See* Pacific Grove, Cal., Mun. Code § 12.20. Municipal Code section 12.20.020 identifies categories of "protected trees," including all trees on private property, "regardless of species, 12 inches or greater in trunk diameter, measured at 54 inches above native grade." Section 12.20.040(a) provides that the "Substantial Pruning or Removal of any Protected Tree requires a permit."

Fox first applied for a permit to remove the two trees on January 15, 2021. Compl. ¶ 19. The City's arborist inspected the trees and "affixed metal property tags to the trees at issue." *Id.* ¶ 20; *see also* Compl. Ex. 5. On June 28, 2021, Fox was notified that his permit request was denied. *Id.* ¶ 21. On February 11, 2024, Fox "re-applied for approval to remove tree #1," and then "amended his pending request to include the removal of tree #2" on March 25, 2024. *Id.* ¶¶ 22-23. Ultimately, Fox's application was denied, as discussed further below. *See id.* ¶¶ 24-33.

On June 20, 2024, Fox filed his original complaint, which he amended on July 25, 2024. Fox seeks just compensation from the City for the "appropriation of his property that is occupied by the trees at issue since June 8, 2021." *Id.* ¶ 58. On August 7, 2024, the City moved to dismiss the amended complaint under Rule 12(b)(1), arguing that Fox's claim was not ripe, and under Rule 12(b)(6) for failure to state a *per se* taking claim.

On January 15, 2025, the Court heard argument on the City's motion to dismiss the first amended complaint. Min. Entry, ECF No. 22. On January 17, 2025, the Court granted the motion to dismiss for failure to state a *per se* physical taking of Fox's property – the only theory of liability that Fox asserted. Order Granting Mot. to Dismiss at 5-7, ECF No. 23 ("MTD Order"). Fox noticed an appeal to the Ninth Circuit Court of Appeals, ECF No. 24, but the appeal was dismissed because the MTD Order – which granted Fox leave to amend – was not final or appealable, ECF No. 30. Fox then noticed another appeal, which met the same fate. ECF Nos. 32, 34. After the second appeal was dismissed, the Court ordered Fox to "file either a second

---

[1] The Court takes judicial notice of the City's municipal code. Req. for Jud. Notice, ECF No. 38.

amended complaint or a statement indicating that Plaintiff will not amend the complaint." Order, ECF No. 35. On May 2, 2025, Fox filed the operative second amended complaint. The City moves to dismiss, raising substantially the same arguments that it previously raised against the first amended complaint.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a complaint if the plaintiff fails to demonstrate that the court has subject matter jurisdiction. *Tosco Corp. v. Communities for Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, as raised by the City in this action, the movant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*

### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

## III. DISCUSSION

Fox advances two theories to support his claim that the City effected a *per se* taking of his property. First, Fox alleges that the City's arborist affixed metal tags to the two trees at issue, which constitutes a physical invasion or occupation of his property. Second, Fox alleges that the City's denial of his permit application to remove the trees constitutes an appropriation of his property.

The City moves to dismiss on three grounds. First, the City argues that Fox's claim is not ripe, and thus the Court lacks subject matter jurisdiction. The Court previously rejected this argument and rejects it again here. Second, the City argues that Fox's claim is time-barred by the applicable two-year statute of limitations. The Court agrees that Fox's claim is time-barred to the extent Fox contends that affixing metal tags to the trees in 2021 constitutes a taking. However, Fox's claim is not time-barred to the extent Fox challenges the City's 2024 denial of his permit application. Third, the City argues that its decision to deny Fox's permit application does not constitute a *per se* taking of his property. The Court agrees and dismisses the complaint on this basis.

### A. Ripeness

"[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Knick v. Twp. of Scott*, 588 U.S. 180, 189 (2019). "When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision." *Pakdel v. City & Cnty. of San Francisco*, 594 U.S. 474, 475 (2021) (per curiam). However, "[t]he finality requirement is relatively modest. All a plaintiff must show is that 'there [is] no question . . . about how the regulations at issue apply to the particular land in question.'" *Id.* at 478 (quoting *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 739 (1997)). The purpose of the finality requirement is to ensure that "the government is committed to a position," so that the plaintiff "is not prematurely suing over a hypothetical harm." *Id.* at 479. For this reason, only "de facto finality" is needed, and a plaintiff's "administrative missteps do not defeat ripeness once the government has adopted its final position." *Id.* at 479-80.

Fox's claim is ripe to the extent it is based on a physical invasion of his property through the City's act of affixing metal tags to the trees. "Where there has been a physical invasion, the taking occurs at once, and nothing the city can do or say after that point will change that fact." *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1281 n.28 (9th Cir. 1986), *overruled on other grounds by Yee v. City of Escondido*, 503 U.S. 519 (1992).

Fox's claim is also ripe to the extent it is based on the City's denial of his application to remove the trees from his property. On this point, the Court previously held that "Fox's claim is ripe because the City reached a *de facto* final decision to deny his application" in 2024. MTD Order at 4. The Court reaches the same conclusion again here.

Fox applied to remove the trees from his property in February 2024. *See* Compl. ¶¶ 22-23. After months passed without a decision from the City, Fox "construed the lack of response as a constructive denial" of his application and appealed to the City's Beautification and Natural Resources Commission (the "Commission"). *Id*. ¶ 24. On June 18, 2024, the Commission heard Fox's appeal and "voted unanimously to deny" Fox's application. *Id*. ¶ 24. A month later, Fox sent "a request to the City Council of Pacific Grove to appeal the adverse decision." *Id*. ¶ 32. The City Attorney notified Fox that the appeal was being rejected as untimely. *Id*. ¶ 33; *see also* Compl. Ex. 13 ("[T]he City will not be processing [Fox's] purported appeal because it was not filed by the June 28, 2024 deadline."). Moreover, the City claims that Fox cannot file another application because "nothing in the City's ordinance authorizes such successive applications." Reply at 6, ECF No. 16. Therefore, "the City has committed to deny Fox's application to remove the trees from his property, and thus Fox's claim is ripe." MTD Order at 4.

The City asks the Court to reach a different conclusion this time around because the second amended complaint adds allegations regarding Fox's initial permit application in 2021. Compl. ¶¶ 19-21. In the City's view, the 2021 denial was not a final decision because the City noted that "further investigation by a qualified arborist" was required. Mot. at 15 (quoting Compl. Ex. 6). The City also notes that Fox failed to appeal the 2021 denial. *Id*. But Fox's failure to exhaust his remedies in 2021 makes no difference now. Fox ultimately re-applied in 2024, seeking the same relief that the City tentatively denied him in 2021, and the City denied the 2024 application.

5

1    It is immaterial that, if Fox had taken further action in 2021, the City "might have reached

2    a compromise" with Fox. Mot. at 15. The purpose of the ripeness inquiry is to determine whether

3    "avenues still remain for the [City] to clarify or change its decision." *Pakdel*, 594 U.S. at 480; *see*

4    *also Palazzolo v. Rhode Island*, 533 U.S. 606, 622 (2001). Here, there are no further avenues for

5    the City to clarify or change its decision. The City has not identified any further steps that Fox

6    could take to seek relief, nor has the City indicated any willingness to revisit its decision to deny

7    his permit application.[2] The ripeness requirement does not require property owners to navigate an

8    interminable and Kafkaesque bureaucracy once the government has closed off avenues for relief.

9    The cases cited by the City are inapposite because Fox filed the appropriate permit

10   application and pursued procedural avenues until the City reached a *de facto* final decision to deny

11   his application. *See* Mot. at 15-16. By contrast, in *Ralston v. County of San Mateo*, the plaintiffs'

12   claim was not ripe because plaintiffs received only "preliminary" guidance from the county's

13   planning director but failed to file an application for a coastal development permit ("CDP") as

14   required. No. 21-cv-01880-EMC, 2021 WL 3810269, at *2, *5-6 (N.D. Cal. Aug. 26, 2021)

15   ("[T]he [c]ounty cannot issue a final decision until [p]laintiffs submit a CDP application.").

16   Likewise, in *DiVittorio v. County of Santa Clara*, the government did not reach a final decision

17   because the plaintiff's application was incomplete. No. 21-cv-03501-BLF, 2022 WL 409699, at

18   *7 (N.D. Cal. Feb. 10, 2022); *see also* MTD Order at 5 (discussing *Ralston* and *DiVittorio*).

19   Accordingly, the Court DENIES the City's motion to dismiss on this basis.

20   **B.    Timeliness**

21   Next, the City moves to dismiss Fox's claim as untimely. "If the running of the statute [of

22   limitations] is apparent on the face of the complaint, the defense may be raised by a motion to

23   dismiss." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). However, "a

24   complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of

25   facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68

26   F.3d 1204, 1207 (9th Cir. 1995). "California's statute of limitations for personal injury actions

---

[2] At the October 22, 2025 hearing, the City explained that its reference to potential compromise in 2021 does not mean that the City is willing to compromise or reconsider its decision ***now***.

1  governs claims brought pursuant to 42 U.S.C. § 1983," including Fox's taking claim against the
2  City. *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 956 (9th Cir. 2018). Therefore,
3  Fox's claim is "subject to a two-year statute of limitations." *Id.* The complaint was filed on June
4  20, 2024; thus, Fox's claim is time-barred if it accrued before June 20, 2022.

The Court concludes that Fox's claim based on the City's permit denial is timely because it accrued in 2024, once the City reached a *de facto* final decision. *See supra* Section III.A; *cf. Pakdel*, 594 U.S. at 475 (instructing that a federal court should not consider a regulatory taking claim before the government reaches a final decision).

By contrast, Fox's claim is untimely to the extent it is based on the City's act of affixing metal tags to the trees in 2021.[3] "[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Knick*, 588 U.S. at 189. In the second amended complaint, Fox states definitively that "[t]he effective date of the appropriation of [his] property was no later than June 8, 2021 by which time the City's arborist had affixed the City's metal tags to [Fox's] trees such as to put [Fox] and any tree removal services on notice that those trees could not be removed with a permit from the City." Compl. ¶ 57; *see also id*. ¶ 58 (seeking just compensation "for the appropriation of [Fox's] property that is occupied by the trees at issue since June 8, 2021"). These allegations are consistent with Fox's statements at the first motion-to-dismiss hearing: "[I]n 2021, the tree inspector for the City of Pacific Grove nailed metal identification tags to my trees, thereby putting me and the world on notice that they were not to be removed without permission from the City of Pacific Grove. In my view, that's when the per se taking occurred." 1/15/25 Hr'g Tr. 3:5-12.

Accordingly, the Court GRANTS the City's motion to dismiss Fox's claim to the extent it is based on a physical invasion of property due to the City's act of affixing metal tags to the trees.

---

[3] The Court assumes without deciding that affixing the metal tags to trees on Fox's property could constitute a *per se* physical taking. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982) (holding that "a permanent physical occupation authorized by government is a taking"). In *Loretto*, the Supreme Court held that a permanent and "direct physical attachment of plates" and other materials to a building was sufficient for a *per se* taking claim. *Id*. at 438. The Supreme Court further reasoned that "constitutional protection for the rights of private property cannot be made to depend on the size of the area permanently occupied." *Id*. at 436.

7

### C. Failure to State a Claim

Finally, the City moves to dismiss the complaint for failure to state a claim. Fox asserts one claim for relief for a *per se* physical taking of property for public use without just compensation. Compl. ¶¶ 52-58. Fox argues that, by denying his permit application, the City has physically appropriated his "private property occupied by [the] trees" for the public purpose of growing the City's "urban forest." *Id.* ¶ 55.

"The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005). "When the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021). The Supreme Court has also "recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster – and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle*, 544 U.S. at 537. "[W]here government requires an owner to suffer a permanent physical invasion of her property – however minor – it must provide just compensation." *Id.* at 538. Likewise, when a land-use regulation completely deprives an owner of all economically beneficial use of her property, the regulatory taking also gives rise to a *per se* taking claim. *Id.* at 538-39.

Here, the Court concludes that Fox does not plausibly allege a *per se* taking claim, which is the only theory of liability Fox asserts. *See infra* Section III.D. Although Fox's claim that the City affixed metal tags to the unwanted trees on his property might describe a direct appropriation or physical invasion of property, that claim is time-barred. *See supra* Section III.B. Therefore, Fox's only remaining theory is that the City's decision to deny his permit application effectively appropriates the land on which the trees are growing.

The City's decision to deny Fox's permit application partially limits Fox's use of his property insofar as it prevents him from removing two unwanted trees. But this use restriction does not rise to the level of a *per se* taking. The City did not take title to any part of Fox's property, nor did it authorize the government or any other person or object to enter and occupy

8

Fox's property.[4]  Absent an appropriation of or intrusion into his property by the government or a third party, Fox cannot plausibly allege a *per se* taking claim.

The cases Fox relies on illustrate this point.  In each case, there was a *per se* physical taking because the government either took legal title to the plaintiff's property or authorized third parties to use the plaintiff's property.  *Horne v. Department of Agriculture* involved a "reserve requirement" that required raisin growers to turn over a significant portion of their crop (up to 47% in one year), free of charge, to a "Raisin Administrative Committee."  576 U.S. 350, 354-55 (2015).  The reserve requirement was "a clear physical taking" because "raisins are transferred from the growers to the Government.  Title to the raisins passes to the Raisin Committee."  *Id*. at 361.  *Cedar Point Nursery* concerned a California regulation that required agricultural employers to "allow union organizers onto their property for up to three hours per day, 120 days per year" so that they could "solicit support for unionization."  594 U.S. at 143.  The regulation effected a *per se* taking because, "[r]ather than restraining the [employers'] use of their own property, the regulation appropriates for the enjoyment of third parties the owners' right to exclude."  *Id.* at 149.  Finally, *Loretto* addressed a New York law that required a landlord to "permit a cable television company to install its cable facilities upon his property."  458 U.S. at 421.  This "permanent physical occupation authorized by government" was a *per se* taking.  *Id.* at 426.  The City's denial of a tree removal permit is not comparable to any of these *per se* takings.

In his opposition, Fox argues that the City's denial of his permit application is "no different from a formal, recorded, easement" imposed upon his property for the purpose of preserving the city's "urban forest."  Opp. at 6, No. 40.  Fox therefore likens this case to *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994).  But "both *Nollan* and *Dolan* involved . . . government demands that a landowner dedicate an easement allowing public access to her property as a condition of obtaining a development permit."  *Lingle*, 544 U.S. at 546.  By contrast, the City has not exacted an easement from Fox's

---

[4] Fox does not allege that the City placed the trees on his property, nor that the City compelled him to plant the trees in the first place.  *Cf.* Compl. ¶ 6 (alleging that the trees were planted in 1991); *see also* 1/15/25 Hr'g Tr. 5:4-5.

9

property – Fox is not required to allow the government or the public to access his property. Instead, the City's decision merely limits Fox's own use of his property, and to a limited extent.

Fox also relies on *F.P. Development, LLC v. Charter Township of Canton*, 16 F.4th 198 (6th Cir. 2021), which involved a challenge to a tree ordinance. But the ordinance in that case differed in one significant respect: As a condition of granting a development permit, the ordinance required the property owner to replant one or more trees for every tree removed from the property. *Id*. at 206. The ordinance also required the property owner to bear the associated costs. *Id*. The Sixth Circuit held that this mitigation requirement was an "unconstitutional condition" akin to the easements at issue in *Nollan* and *Dolan*. *Id*. Here, by contrast, the City's ordinance does not impose any mitigation requirement on Fox, nor does it exact any other property interest from Fox.

Finally, although the Court is sympathetic to Fox and his predicament, construing the City's protected tree ordinance as a *per se* taking would elevate countless land-use restrictions to *per se* takings. But "[l]and-use regulations are ubiquitous and most of them impact property values in some tangential way – often in completely unanticipated ways. Treating them all as *per se* takings would transform government regulation into a luxury few governments could afford." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 323-24 (2002).

Accordingly, the Court GRANTS the City's motion to dismiss for failure to state a claim.[5]

### D. Dismissal is Without Leave to Amend

The Court concludes that the complaint should be dismissed with prejudice and without leave to amend. In making this determination, the Court considers factors such as "undue delay, bad faith or dilatory motive on the part of the [Plaintiff], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The

---

[5] The City also argues that "Plaintiff's claims for declaratory and injunctive relief should be dismissed" because equitable relief is "unavailable where state law provides a mechanism to recover damages." Mot. at 16. The City is correct that, "[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." *Knick*, 588 U.S. at 201. However, when reading the complaint's prayer for relief in context, Fox seeks just compensation, not an injunction to prevent the City from enforcing its municipal code. *See* Compl. at 11 (requesting "an injunction requiring the City of Pacific Grove *to pay him just compensation*") (emphasis added). Thus, the City's argument is not persuasive.

10

Court also considers "the number of times the plaintiff has already been allowed to amend." *Schwartz v. Miller*, 153 F.4th 918, 932 (9th Cir. 2025).

Here, the Court finds that dismissal without leave to amend is appropriate in light of Fox's failure to cure pleading deficiencies after the Court previously granted leave to amend, and because amendment would be futile. *See* MTD Order at 7 (granting leave to amend). Fox's failure to cure pleading deficiencies indicates that further leave to amend would be futile. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (holding that failure to correct pleading deficiencies after dismissal is a "strong indication" that further amendment would be futile); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996))).

The Court also finds that leave to amend would be futile because Fox's claim is legally deficient, and he has not asserted any other legal theory that could support a claim. *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018) (Leave to amend need not be granted "when the claims are barred by the applicable statute of limitations."); *see also Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) ("If no amendment would allow the complaint to withstand dismissal as a matter of law, courts consider amendment futile."); *Lamoon, Inc. v. Lamour Nail Prods., Inc.*, 373 F. App'x 795, 797 (9th Cir. 2010) (When a plaintiff's "claims have underlying legal deficiencies that cannot be cured, amendment would be futile.").

In each of the three iterations of his complaint, Fox chose to assert an as-applied *per se* taking claim, and he has declined to assert a taking claim under any other theory. Fox expressly disclaims any facial challenge to the City's code.[6] Fox also does not challenge the denial of his

---

[6] "A facial challenge involves a claim that the mere enactment of a statute constitutes a taking, while an as-applied challenge involves a claim that the particular impact of a government action on a specific piece of property requires the payment of just compensation." *Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1051 (9th Cir. 2004) (quoting *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993)). Fox "has not asserted a facial takings claim." Opp. at 7; *see also* Opp. at 14.

11

permit application as a denial of substantive due process. *Cf. Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 852-53 (9th Cir. 2007). Finally, Fox does not challenge the denial of his permit application as a regulatory taking that partially restricts the use of his property.[7] At the first motion-to-dismiss hearing, the Court asked Fox to "elaborate about what [his] theory would be moving forward should the Court grant leave to amend." Hr'g Tr. 6:16-17. Fox responded that this case "is really more of a physical occupation than it is a use" restriction. *Id.* at 6:16-7:10. Fox elected not to amend his complaint to assert this type of regulatory taking claim, and he does not rely on such a theory in opposition to the City's motion to dismiss.

In sum, because Fox's claim is legally deficient under the only theories Fox has advanced, no additional allegations could save his claim. Under these circumstances, amendment would be futile, and the Court DENIES leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES the City's motion to dismiss for lack of subject matter jurisdiction and GRANTS the City's motion to dismiss for failure to state a claim. Because Fox has not cured pleading deficiencies despite the Court's prior order granting leave to amend, and because amendment would be futile, Fox's complaint is DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: November 3, 2025

Eumi K. Lee
United States District Judge

---

[7] When a plaintiff challenges a regulatory taking that does not amount to a *per se* taking, "courts apply a flexible test that considers 'the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action.'" *Cedar Point Nursery*, 594 U.S. at 148; *see also Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).